OPINION OF THE COURT
Joseph Jaspan, J.
Defendants Timothy and Daphne Barber and one Eric Jean are charged in Indictment No. 1684-81 with one count *366 of criminal possesion of a controlled substance in the second degree. Defendant Daphne Barber is also charged in Indictment No. 1683-81 with criminal possession of stolen property in the first degree.
The Barbers by written and oral motion have moved to controvert two search warrants issued on June 24, and July 2, 1981, directed to premises 10 Beech Hill Road, Lloyd Harbor, and to suppress the evidence including the cocaine seized thereunder. Eric Jean did not move with respect to the indictment against him and is not a party to these proceedings.
The challenge is directed to the motivation for and legality of a search for stolen property which also resulted in the not surprising seizure of other items including cocaine, alleged to have been found in “plain view”.
Defendants also challenge the truth of allegations in the affidavit of William Quinn dated June 23, 1981.
Hearings were held with respect to the issues raised and the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
The Barbers are brother and sister and at all times relevant to these proceedings were residents at the subject premises in Lloyd Harbor, Long Island, a one-family house on about three acres of secluded property approximately 300 feet from the road.
As early as April, 1980 information came to the attention of Sergeant Walter Kahrs of the Lloyd Harbor Police Department that narcotics were being sold at that premises. The information persisted and unsuccessful efforts were made to develop evidence against the occupants.
On October 26, 1980 the sergeant was advised by phone from California by one David Sparer that his Greenlawn, Long Island, apartment had been burglarized with a loss of stereo and camera equipment and the loss of a motorcycle.
Sergeant Kahrs knew the complainant and was on friendly terms with him and members of his family.
At police request Sparer confirmed his telephonic conversation with a letter dated October 28,1980, with accom *367 ponying bills of sale for the missing items, adding: “I know that Daphne Barber [residing at 10 Beech Hill Road, Lloyd Harbor] stole my belongings, because when my girlfriend [Marti Brodsky] called Daphne, she [Daphne] told Marti, that if she [Marti] paid Daphne the $1,200 I owe her, she [Daphne] would return my belongings.”
It also appears that Daphne Barber left a note in Sparer’s apartment in which she demanded repayment of $1,200 or she would sell all his property including his motorcycle.
The $1,200 debt was alleged to be drug related.
Despite the sergeant’s inquiries and phone conversations relating to this investigation, nothing of significance happened until December 1, 1980 when the sergeant came upon and recovered the motorcycle being driven by another subject. Sergeant Kahrs advised Sparer of this event and noting the favorable result asked him whether in return he could “set up some kind of a buy” so that there could be a “narcotic bust on Barber”. Sparer remained in California.
In January independent efforts were made by law enforcement officials to obtain evidence that Daphne Barber was selling controlled substances out of those premises. These efforts were not successful and were terminated in February, 1981.
David Sparer did return to Long Island from California on June 23, 1981 and met with Sergeant Kahrs to recover his motorcycle. Since the complainant was not available the police were ready to pursue the charges against Barber with respect to the stolen property and Sparer signed a formal complaint at the Suffolk County Police Department, Second Squad. Sparer did then advise that he had purchased drugs from Daphne Barber in the past but there was no further discussion about that subject.
Sparer, apparently at the suggestion of the police, went to the Barber house and when nobody answered his knock, he went to the back of the house, looked in a bedroom window and saw his stereo equipment sitting on a stand next to the bed.
*368 The complainant later signed an affidavit to the effect that his house was burglarized, that certain specified items were missing, and that in October, 1980 he spoke with Daphne Barber and she admitted she “had taken all the stuff” and was holding it for repayment of $1,280. Further, he set forth the facts about his visit on June 23,1981 to the Barber house and his observation of the stereo set. For reasons hereinafter set forth, the court rejects the allegation that Sparer never saw or signed that affidavit.
Upon that affidavit and a covering affidavit by Detective William Quinn dated June 24,1981, a Judge of the District Court authorized a search of premises 10 Beech Hill Road, Lloyd Harbor, New York, occupied by Daphne and Timothy Barber to seize property constituting evidence of the crime of criminal possession of stolen property.
The warrant was not executed on that date because nobody was home.
On July 1, 1981 10 officers went to the target premises and upon admission went to the bedroom of Daphne Barber where in “plain view” they saw the stereo referred to in the application for the warrant and also observed five packages of a white powder believed to be cocaine, a large package óf a brownish substance believed to be marihuana, a scale and other implements used in the narcotics trade and some ammunition for a weapon and a Canon A-l camera. There were no members of the narcotics squad among the members of the raiding party although such an officer accompanied those who tried to execute the warrant on June 24, 1981.
The premises were secured but the property was not seized. Instead the officers went to a Village Justice and in the early morning hours of July 2 secured another warrant authorizing search for .narcotics, narcotics implements, firearms and the camera.
Upon return to the premises the items referred to above were seized and form the basis for the subject indictments.
In addition, a weapon was found but the charges with respect thereto are still pending in the District Court.
*369 CONCLUSIONS OF LAW

(a) The Plain View Doctrine

Plain view alone is never enough to justify the warrant-less seizure of evidence (Coolidge v New Hampshire, 403 US 443, 468). The discovery of the object must have been inadvertent and not planned or anticipated by the authorities (Coolidge v New Hampshire, supra, p 469).
There is no doubt that the police in this case suspected that the Barbers or at least Daphne Barber was criminally engaged in the possession and/or sale of controlled substances. They would have used any lawful means available to them to obtain the necessary evidence to enable them to prosecute.
In this effort they failed prior to July 1, 1981.
Nor were they averse to charging the Barbers for any other crime which could be proved in a court of law and the information that they allegedly possessed stolen property afforded that opportunity.
The application of June 23, 1981 for the search of the Barber residence represented an effort to provide evidence of a crime independent of any investigation into illegal drug activity. It was not a ruse to obtain entry into the Barber residence to search for drugs.
Nevertheless, the police were aware of the possibility that the lawful search of the premises might reveal the presence of contraband of that character.
The ultimate discovery was not a complete surprise. The question is whether it may be regarded as having been “anticipated” and therefore could not be regarded as having been found in plain view.
No New York case has been cited or found which explicitly resolves this issue. But there are several Federal cases which do.
In United States v Hare (589 F2d 1291) the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) was conducting an investigation of the defendant for firearms violations. During this investigation an ATF agent contacted the Drug Enforcement Administration (DEA) and learned that Hare was also being investigated for narcotics violations.
*370 Some months later the ATF was able to establish probable cause to support a search warrant authorizing a search of defendant’s home for firearms and ammunition. The DEA was invited to be present during the search and in fact “guarded the doors to the dwelling” while that search took place. Drugs and drug paraphernalia were subsequently found.
The United States Court of Appeals in a careful and detailed analysis of the term “inadvertent” reversed a finding of the District Court and concluded that suspicions that the house to be searched might contain narcotics did not amount to probable cause and the discovery of the drugs during the search did not violate the inadvertence requirement for a plain view seizure. It distinguished between expecting to find evidence in a particular place and probable cause to believe it to be there. It wrote (pp 1294-1295): “We conclude, then, that ‘inadvertence’ in this context means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise-justified search. There are many times when a police officer may ‘expect’ to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery.”
It concluded that the inadvertency requirement in Coolidge (supra) is aimed at condemning seizures made under the plain view doctrine where the police were possessed of sufficient information to obtain a search warrant but did not do so.
This conclusion was consistent with an earlier decision in United States v Bolts (558 F2d 316) in which the police made the foreseeable discovery and seizure of a passport *371 during a warrantless arrest but which the court said was nevertheless unplanned and inadvertent.
Foreseeability was held not to be in conflict with the concept of inadvertence.
Subsequently in United States v Antill (615 F2d 648, 649), the Fifth Circuit again held that: “[t]he requirement that seizure of evidence in plain view result from an inadvertent discovery does not proscribe the seizure in this case because the discovery of the handcuff key, although * * * within the realm of foreseeable possibilities, was unplanned and inadvertent.”
In United States v Liberti (616 F2d 34) the Second Circuit reached the same conclusion. It said (p 37): “ ‘What Coolidge proscribes is an anticipated discovery, where the police know in advance the location of the evidence and intend to seize it * * *’ For the Government to be charged with advance knowledge, it must at the very least have had probable cause to believe that the additional cosmetics would be found * * * Mere expectation or suspicion that discovery would occur does not preclude application of the plain view doctrine. United States v. Hare, supra, 589 F.2d at 1294; United States v. Worthington, 544 F.2d 1275,1280 n.4 (5th Cir.), cert, denied, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); United States v. Cushnie, supra, 488 F.2d at 82.” (Emphasis added.)
The Fifth Circuit in United States v Ortega (644 F2d 512) concluded that if suspicion is confirmed during the course of another legitimate intrusion, the officers are in the same position as if they were taken wholly by suprise.
Analysis shows that these cases are not in conflict with the 1976 language of the New York Court of Appeals in People v Di Stefano (38 NY2d 640).
In that case defendant urged that the authorized interception of conversations relating to bookmaking, gambling and extortion, later broadened out to include other crimes, did not justify the interception of evidence with respect to robbery and conspiracy since the police had previously been alerted to that possibility.
Since eavesdropping warrants were held to be “based on substantially the same principles applicable to search war *372 rants for physical evidence” (p 648), the court held that while the authorities “knew of defendant and even may have entertained questionable suspicions as to his plans” (p 649) they nevertheless lacked probable cause to seek amendment of the warrant to include these crimes and therefore the anticipated conversations when intercepted were deemed to have been discovered in plain view.
Suspicion was not equated with anticipation. The test was whether probable cause existed to believe the crime was being or would be committed.
In the instant case the police did not prior to July 1, 1981 possess the quantum and quality of information necessary to secure a warrant for the search of the premises for drugs. They were not thereby precluded from pursuing a separate and independent investigation into other criminal activity.
The seizure was not prohibited by Coolidge v New Hampshire (403 US 443, supra) or any of its progeny. It is doubtful that they needed a second search warrant to pursue the search for drugs, but they nevertheless took the precaution to obtain same and only they effected the seizure.
The motion to suppress the property seized during the searches of July 1, 1981 and July 2, 1981 is denied.
(6) The Sufficiency of the Warrant
The defendants challenge the truthfulness of the affidavit of Detective William Quinn to the extent that he relies upon information previously provided by David Sparer in the form of an affidavit dated June 23, 1981.
The moving papers now include a statement of David Sparer dated October 23, 1981 secured at the instance of counsel for defendants in which Sparer swears that he never knowingly signed the affidavit of June 23, 1981 which supported the search warrant and that in reference to the property taken from his apartment he “never considered these items stolen.”
However, the credible testimony of Sergeant Kahrs and Detective William Quinn and Lorraine Vecchio, a clerk typist at the Lloyd Harbor Police Department, is to the *373 contrary. I find that Sparer did knowingly and purposefully make the sworn statements contained in the challenged affidavit.
Further, the letter of David Sparer dated October 28, 1980, at the very outset of investigation states in his handwriting “I know that Daphne Barber (residing at 10 Beech Hill Road, Lloyd Harbor) stole my belongings.” This is inconsistent with his recent disclaimer.
The defendants were given an adjournment of the hearings so that they could produce Mr. Sparer as a witness but were unable to do so.
The defendant has failed to meet his burden of proof to establish that the affidavits supporting the warrants were perjurious (People v Alfinito, 16 NY2d 181).
In addition, the court notes that although the initial warrant contained an unjustified no-knock provision the police took some pains not to rely on it, instead choosing to return at a later date when the defendants were at home.
Where the warrant contains language which is not supported by probable cause, it may be upheld under the doctrine of severability if the surviving portion of the warrant is complete with reference to the surviving part (People v Hansen, 38 NY2d 17; People v Niemczycki, 67 AD2d 442).
Accordingly, the severing of this provision does not affect the validity of the search.
Finally, the defendants contend that the information contained in the affidavits in support of the application for the June 24, 1981 warrant is stale. The question of staleness is a factual determination dependent upon the circumstances in each case (.People v McCants, 59 AD2d 999).
Sparer’s affidavit establishes that he personally viewed his stereo set in the Barber residence one day prior to the issuance of the warrant. The vitality of the probable cause to believe that the stolen property would be discovered was therefore clearly established at the time the warrant was issued (Sgro v United States, 287 US 206).
The motion to controvert the search warrant is denied.