**STATE of Utah, Plaintiff and Respondent,**

v.

**Allen Boyd MILLER, Defendant and Appellant.**

No. 860245–CA.

Court of Appeals of Utah.

Aug. 17, 1987.

Ronald J. Yengich, Earl Xaiz, Yengich, Rich, Xaiz & Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., David B. Thompson, Asst. Atty. Gen., for plaintiff and respondent.

Before BENCH, GREENWOOD and GARFF, JJ.

## OPINION

BENCH, Judge:

Defendant Allen Boyd Miller appeals his conviction of production of a controlled substance. We affirm.

On August 1, 1985, a search warrant was issued and executed authorizing police officers to search defendant's residence and all structures and vehicles located on the property. The warrant was based on an affidavit filed by Detective Stewart Smith of the State Bureau of Narcotics and Alcoholic Beverage Law Enforcement. Upon executing the warrant, officers seized several items which they believed were marijuana plants and personal property used in the production of controlled substances. Defendant was charged by information with production of a controlled substance, a third degree felony in violation of Utah Code Ann. § 58-37-8(1)(a)(i) (1987). Defendant filed a motion to suppress all evidence seized pursuant to the search. After a hearing on February 6, 1986, the trial court denied defendant's motion. The case was tried to the court on June 19, 1986 on stipulated facts. The only issue at trial was whether the State's evidence proved beyond a reasonable doubt the plants cultivated by defendant and seized by police were marijuana. In a memorandum decision filed July 1, 1986, the trial court concluded the State had met its burden and found defendant guilty as charged.

On appeal, defendant contends the court erred in denying his motion to suppress because the affidavit filed in support of the search warrant failed to establish probable cause, contained false or misleading statements, and failed to justify a "no knock" search warrant.

The Utah Supreme Court has established the standards of review applicable to the instant case. In *State v. Romero*, 660 P.2d 715, 719 (Utah 1983), the Court ruled, "A reviewing court should pay great deference to a magistrate's determination of probable cause." Furthermore, in *State v. Gallegos*, 712 P.2d 207, 208-09 (Utah 1985), the Court held, "this Court will not disturb the ruling of the trial court on questions of admissibility of evidence unless it clearly appears that the lower court was in error."

Detective Smith's affidavit in support of the search warrant reads, in pertinent part, as follows:

On June 14, 1985, upon receipt of complaints of unusual traffic in the neighborhood of suspect premises by neighbors, affiant and other members of the State of Utah Narcotics and Liquor Law Enforcement began investigation and surveillance of said suspect premises. In plain view observation of premises affiant observed and photographed the residence showing three large steel storage sheds to rear; two swamp coolers that blow continually and empty into boarded up and bermed basement area; a furnace like apparatus with two large vent stacks are seen in garage area where windows are also boarded up, but are visible from roof line and when side door is open; a series of lights commonly used for grow lights were observed and photographed on swamp cooler; and neighbors have observed occupants of residence mixing up peat moss although the yard has never been cared for or cultivated in any fashion. A traffic survey of the area identified several cars for which ownership records identified a known drug user coming and going from the premises in the early morning hours. These

vehicles stay only a short time then leave.

On numerous occasions a U–Haul truck has been located to the rear of the garage and neighbors have heard loading and unloading from the side door which is not as readily observable as the front garage door. This loading seems to occur at odd hours late at night. Neighbors have never seen the large garage door open. Neighbors reported seeing two large dogs with occupants when they were mixing peat moss, but most of the time the dogs remain inside.

Contact with Utah Power and Light showed service lines coming into the home three times larger than required of that size residence. Monthly power consumption four to five times in excess of normal, with one bill for $2,400.00 which suspect paid when meter reader came to read the meter. Utah Power and Light has been denied access to meter by Miller and has paid any bill without contest. The suspect, Allen B. Miller has prior illegal possession charges for possession of psilacybin mushrooms, 1/4 pound and possession of marijuana. Franklin David Spain of the same address has also been arrested for possession of marijuana in the last year. Miller according to neighbors acts very secretive when observed around premises.

Affiant, a trained narcotics officer knows that peat moss is used for growing marijuana and mushrooms and has observed numerous stacks of plastic buckets at the residence, knows that furnaces can be used to dry plants for usage, and that swamp coolers can vent and humify plants being grown in a basement as at suspect premises. Large electrical consumption would be used to facilitate grow lights and drying equipment; and the truck used to load shipments for periodic distribution or final cultivation of plants at another growing site. Credit

report shows suspect Miller self-employed with Miller's autobody shop which does not seem to exist. Suspect truck observed at residence never has tools in it.

Smith, based on his experience as a narcotics officer, concluded the above information, when considered cumulatively, established probable cause that defendant was engaged in cultivating marijuana or other illegal substances.

■ The fourth amendment to the United States Constitution and article one, section fourteen of the Utah Constitution both require a finding of "probable cause supported by oath or affirmation" prior to issuance of a search warrant. The United States Supreme Court, in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), redefined the test to determine whether an affidavit establishes the necessary probable cause:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed.

*Id.* at 238–39 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). The Utah Supreme Court adopted the *Gates* "totality of the circumstances" standard in *State v. Anderson,* 701 P.2d 1099 (Utah 1985), agreeing to review an affidavit "in its entirety and in a common-sense fashion…." *Id.* at 1102. In reestablishing the "totality of the circumstances" test, the United States Supreme Court rejected the former "*Aguilar-Spinelli*" test[1] as "hypertechni-

---

1. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). As understood by most courts, the test required strict satisfaction of a two-pronged test whenever a supporting affidavit relied on an informant's tip: 1) the affidavit must establish the "basis of knowledge" of the informant, and 2) the affidavit must provide facts establishing the informant's "veracity" or his "reliability" to the specific case.

cal and divorced from [reality]." *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984).

In the instant case, the trial court, in its memorandum decision, reviewed all the information presented in Smith's affidavit. Acknowledging the training and experience of the officer, the court found, under the totality of the circumstances, the affidavit contained sufficient information to establish probable cause for a warrant.

Defendant argues the affidavit failed to address the veracity or reliability of the unidentified informant neighbors. Although no longer a required test under the *Gates* standard, the veracity or reliability of an informant is still a relevant consideration when reviewing the totality of the circumstances. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328; *see also State v. Hansen*, 732 P.2d 127, 130 (Utah 1987). However, the average neighbor witness is not the type of informant in need of independent proof of reliability or veracity. Rather, "[v]eracity is generally assumed when the information comes from an 'average citizen who is in a position to supply information by virtue of having been a crime victim or witness.'" *State v. Harris*, 671 P.2d 175, 180 (Utah 1983) (quoting LaFave, *Search and Seizure* § 3.3 (1978)).

Defendant further argues the "innocuous" facts presented in the affidavit are as consistent with innocent activity as with criminal activity. The trial court noted defendant "offered no evidence whatsoever as to what that equally consistent lawful conduct would be." To dissect the affidavit, fact by fact, is exactly the "hypertechnical" review the *Gates* test was reestablished to eliminate. *See Upton*, 466 U.S. at 732–33, 104 S.Ct. at 2087–88; *Hansen*, 732 P.2d at 130. Officers corroborated virtually all of the information received from the neighbors through their independent investigation and surveillance. When viewed as a whole, through the eyes of a trained, experienced officer, the facts become not so innocuous.[2]

Our review of the sufficiency of the affidavit "should not take the form of de novo review." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. We find the magistrate had a "substantial basis" of information to conclude probable cause existed.

■ Defendant next argues Detective Smith made false statements in the affidavit knowingly or with reckless disregard for the truth. Once these false statements are removed, defendant contends the remaining information fails to establish probable cause.

The United States Supreme Court, in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The Utah Supreme Court followed the *Franks* rule in *State v. Nielsen*, 727 P.2d 188 (Utah 1986).

Defendant alleges several misstatements or false statements made by Smith in his affidavit. However, as the trial court explained in its memorandum decision, "all of the alleged misstatements ... were based upon reasonably reliable information such

---

2. "Police officers by virtue of their experience and training can sometimes recognize illegal activity where ordinary citizens would not. Some recognition should appropriately be given to that experience and training where there are objective facts to justify the ultimate conclusion." *State v. Dorsey*, 731 P.2d 1085 (Utah 1986).

as official public documents, business records, police reports, and conversations with sheriffs previously involved with the suspect." Moreover, defendant offered no evidence that Detective Smith knowingly or with reckless disregard for the truth included any allegedly false information in the affidavit. As the *Franks* decision requires, "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." 438 U.S. at 171, 98 S.Ct. at 2684. Even if the few allegedly false statements were removed, the remaining information clearly established the requisite probable cause.

■ Defendant argues the facts and circumstances presented in the affidavit failed to justify a "no knock" warrant. Utah Code Ann. § 77–23–10(2)(1982) provides:

> When a search warrant has been issued authorizing entry into any building, room, conveyance, compartment or other enclosure, the officer executing the warrant may use such force as is reasonably necessary to enter:
>
> (2) Without notice of his authority and purpose, if the magistrate issuing the warrant directs in the warrant that the officer need not give notice. The magistrate shall so direct only upon proof, under oath, [1] that the object of the search may be quickly destroyed, disposed of, or secreted, or [2] that physical harm may result to any person if notice were given.

In his affidavit, Smith requested a "no knock" warrant because the marijuana plants could be "quickly destroyed, disposed of, or secreted," and "[t]wo large watch dogs are always present and might pose a hazard to arresting officers." We find the magistrate had a sufficient basis to justify a "no knock" warrant on either of the two statutory grounds. In summary, we find no error in the trial court's ruling and therefore affirm the denial of defendant's motion to suppress.[3]

■ Defendant last argues the State failed to prove beyond a reasonable doubt the seized substance was marijuana. At trial, the State presented two witnesses, Detective Smith and Kevin Smith, a criminalist at the Utah State Crime Laboratory. Detective Smith testified he had attended various narcotics investigation instructional courses and had worked in narcotics for the past two years. Upon seizing the plants, Detective Smith concluded they were marijuana by their smell, appearance and structure. Kevin Smith testified he examined the plants microscopically and observed hairs typical of marijuana plants. He also conducted chemical tests on the plants and, based on the test results and his observations, concluded the plants were marijuana. On cross examination Kevin Smith testified he never had any courses in botany. He also testified other plants have hairs like marijuana and react similarly to the chemical tests.

Defendant called Dwight Fullerton, a professor at Oregon State University's College of Pharmacy, and a specialist in plant identification. Fullerton testified that marijuana's structure and hairs are not unique, and many plants react similarly in the chemical tests. Fullerton concluded if he were presented with the same evidence produced by the State, he could not state with a reasonable degree of scientific certainty the plants were marijuana. On rebuttal, the State offered the testimony of Robert Brinkman, Bureau Chief at the Utah State Crime Laboratory. He explained the Utah standard for analyzing marijuana and testified the tests involved are sufficient to determine with a reasonable degree of certainty the identification of a suspect plant.

The trial court found that scientific tests (together with the objective observations of professional narcotics agents) proved beyond a reasonable doubt the substance seized from defendant was marijuana. "In reviewing a claim of insufficient evidence, this Court must view the evidence in the light most favorable to the verdict and will interfere only when the evidence is so lack-

3. The parties argue the probable cause exceptions in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and Utah Code

Ann. § 77–35–12(g) (1982). In light of our finding probable cause existed, we do not address these issues.

ing and insubstantial that a reasonable person could not possibly have reached a verdict beyond a reasonable doubt." *State v. Tanner*, 675 P.2d 539, 550 (Utah 1983). Clearly the State's evidence supports the trial court's finding. Therefore, we affirm defendant's conviction.

GREENWOOD and GARFF, JJ., concur.