STATE of Utah, Plaintiff and
Respondent,

v.

Lane C. STROMBERG, Defendant
and Appellant.

No. 880618–CA.

Court of Appeals of Utah.

Nov. 8, 1989.

Rehearing Denied Dec. 15, 1989.

Daniel R. Knowlton and Thomas D. Roberts, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Dan R. Larsen, Salt Lake City, for plaintiff and respondent.

Before BENCH, GREENWOOD and CROFT,[1] JJ.

BENCH, Judge:

Defendant appeals from a jury conviction of unlawful possession of marijuana within 1,000 feet of a school, a felony of the third degree. We affirm.

## FACTS

In late April 1988, Syracuse City Chief of Police John W. Gardiner interviewed T.H., a fifteen-year-old girl, during an investigation of an alleged sexual offense. In the interview, T.H. told Chief Gardiner that she was a close friend of defendant's daughter and that she had been in defendant's Syracuse home several times in the preceding eighteen months. T.H. mentioned that she had seen "marijuana pipes" in various locations in defendant's house and that she had last been in defendant's home approximately six weeks earlier. She also observed defendant smoking marijuana in his home on three or four previous occasions.

Chief Gardiner subsequently attempted to corroborate the girl's statements. He contacted the girl's high school counselor and was told that the girl and defendant's daughter were friends. He also learned that the girl had no juvenile court record. Chief Gardiner then contacted the Davis Metro Narcotics Strike Force (Strike Force) and was told that a marijuana user retains possession of pipes and other drug paraphernalia for long periods of time, leading the Chief to believe that paraphernalia seen six weeks earlier would still be present. He also learned that defendant had been convicted of unlawful possession of marijuana in 1980.

On the basis of this information, Chief Gardiner prepared an affidavit for a search warrant to search defendant's house. The affidavit was presented to Second Circuit Judge Alfred Van Wagenen, who determined that there was probable cause to believe that "controlled substances," "drug paraphernalia," and "items evidencing ownership, occupation or control of the ... premises" were to be found in defendant's home. Judge Van Wagenen issued a search warrant for defendant's residence, a single-family dwelling located adjacent to a public elementary school. That evening, May 20, 1988, Chief Gardiner, officers of the Syracuse City Police Department, and members of the Strike Force executed the warrant. A search of defendant's house and garage uncovered 100 grams of marijuana, over a kilogram of pure cocaine, assorted weapons, five marijuana pipes, and other drug paraphernalia.

Defendant was subsequently arrested and charged with four offenses: 1) unlawful possession of a controlled substance

---

1. Bryant H. Croft, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

(cocaine) within 1,000 feet of a public school with intent to distribute, a first degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii), (5)(a)(iii) (Supp.1989); 2) unlawful possession of a controlled substance (marijuana) within 1,000 feet of a public school, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i), (5)(a)(iii) (Supp.1989); 3) unlawful possession of cocaine without tax stamps affixed, a third degree felony, in violation of Utah Code Ann. § 59–19–106(2) (Supp.1989); and 4) unlawful possession of marijuana without tax stamps affixed, a third degree felony, in violation of Utah Code Ann. § 59–19–106(2) (Supp.1989).

Defendant filed a motion to suppress evidence obtained pursuant to the search warrant. After a hearing, the district court denied the motion in a written ruling, finding that, based on the affidavit, "there was a fair probability that contraband or evidence of crime would be found in defendant's home." The court concluded that

the magistrate could have a reasonable common sense belief that the informant had been present when marijuana had been smoked by the defendant upon at least three or four occasions over the past year and a half, that she knew what marijuana was and knew what a marijuana pipe was; that there was an ongoing pattern of marijuana use in the home by the defendant and that marijuana pipes had been seen in the home on a continuing basis over a year and a half period. That such a pipe was observed most recently on the first week of March.

The district court also determined that the warrant adequately described the premises, authorized the search of the attached garage, and that the affidavit supported a search for controlled substances and paraphernalia. The court responded to defendant's argument that the search exceeded the scope of the warrant by finding that the officers were lawfully in the home and could seize other controlled substances and paraphernalia that came into view during the search. Furthermore, the court found that "the officers ... acted with objective good faith in obtaining the warrant and

acted reasonably within its scope." The trial court thus denied defendant's motion, concluding that exclusion of the evidence "would not further the ends of the exclusionary rule."

The parties then agreed to sever the two counts involving "tax stamps" and proceeded to trial on the remaining charges. A jury trial was held on September 21 and 22, 1988. Defendant testified at trial and admitted possessing marijuana, but denied any knowledge of the cocaine found in his garage. He was subsequently convicted of unlawful possession of marijuana, and acquitted of the cocaine charge.

Defendant raises two issues on appeal. First, he claims that the search warrant was unsupported by probable cause and thus evidence seized during the search was improperly admitted. Second, defendant challenges the constitutionality of subsection 58–37–8(5)(a)(iii) both on its face and as applied. That provision modifies the penalty for unlawful possession of small amounts of marijuana from a class A misdemeanor to a third degree felony if possession occurs within 1,000 feet of an elementary or secondary school.

## PROBABLE CAUSE

We first address the denial of defendant's motion to suppress. Defendant's initial contention is that the information Chief Gardiner obtained to support the search was stale.

Although defendant does not specifically cite the legal foundation for his arguments, the fourth amendment of the United States Constitution requires that search warrants be supported by "probable cause," "a standard requiring the issuing magistrate to make a reasonable determination whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Droneburg*, 781 P.2d 1303, 1304 (Utah Ct.App.1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983)). "[W]hen a search warrant is issued on the basis of an affidavit, that affidavit must contain specific

facts sufficient to support a determination by a neutral magistrate that probable cause exists." *State v. Babbell,* 770 P.2d 987, 990 (Utah 1989); *see also State v. Nielsen,* 727 P.2d 188, 190 (Utah 1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987).

When a search warrant is subsequently challenged on the grounds that it was issued without the requisite probable cause, as in this case, "the fourth amendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination." *Babbell,* 770 P.2d at 991. Rather, the determination is "whether the magistrate had a substantial basis to conclude that in the totality of circumstances, the affidavit adequately established probable cause for the issuance of a search warrant." *State v. Hansen,* 732 P.2d 127, 129 (Utah 1987). Moreover, in making this determination, the reviewing court is to give the magistrate's decision "great deference." *Id.* (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331).

The district court reviewed Judge Van Wagenen's probable cause determination after an extensive evidentiary hearing and concluded that there was a substantial basis for issuance of the warrant. Our role in reviewing that determination is limited: "Because a trial court is in an advantageous position to assess witness credibility, 'we will not disturb its factual assessment underlying a decision to ... deny a suppression motion unless it clearly appears that the lower court was in error.'" *Droneburg,* 781 P.2d at 1305 (quoting *State v. Ashe,* 745 P.2d 1255, 1258 (Utah 1987)). Clear error is indicated when the trial court's factual assessment is against the clear weight of the evidence or induces a firm conviction that a mistake has been committed. *Ashe,* 745 P.2d at 1258.

Our review of the record reveals no such error. While the informant had not been in defendant's home in the two months prior to issuance of the warrant, the "mere passage of time does not necessarily invalidate the supporting basis for the warrant." *Hansen,* 732 P.2d at 131.

Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

*United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972). The trial court found that the magistrate could have had a "reasonable common sense belief" that "there was an ongoing pattern of marijuana use in the home." This finding is supported by the information that defendant had previously been convicted of a similar offense and that the activity described by the informant had been continuing over an eighteen-month period. The informant observed marijuana use and marijuana paraphernalia in the home on not one occasion, but on numerous visits to the home. Accordingly, we believe that the district court properly concluded that there was a "fair probability that contraband or evidence of a crime" was still to be found in defendant's home.

Defendant also likens the informant in this case to that of a "confidential" informant. Although the veracity, reliability, and basis of knowledge of a confidential informant are no longer strict prerequisites for establishing probable cause, *see Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, they are still relevant considerations. *Hansen,* 732 P.2d at 130; *Droneburg,* 781 P.2d at 1306; *see also State v. Anderson,* 701 P.2d 1099, 1101–02 (Utah 1985). We conclude, however, that the "informant" in this case is more akin to the "average neighbor witness" described in *State v. Miller,* 740 P.2d 1363, 1366 (Utah Ct.App.1987), than to a confidential informant. Chief Gardiner's informant was specifically named in the affidavit. It is also clear that the informant had personally observed the events she reported and that Chief Gardiner independently attempted to verify her reliability. *See State v. Harris,* 671 P.2d 175, 180 (Utah 1983) (probable cause for search warrant established the moment neighbor reported marijuana cultivation to police). "Veracity is generally assumed when the

information comes from an 'average citizen who is in a position to supply information by virtue of having been a crime victim or witness.'" *Harris,* 671 P.2d at 180 (quoting LaFave, *Search & Seizure* § 3.3 (1978)). Thus, this aspect of defendant's argument is without merit.

■ Defendant also claims that the warrant was pretextual in that the police were seeking evidence of illegal activity other than the possession and use of marijuana. The warrant merely specified controlled substances and drug paraphernalia. We are not persuaded that this description is so broad as to offend the fourth amendment's prohibition against warrants not "particularly describing the ... things to be seized." *See* U.S. Const. amend. IV. The trial court determined that there was a reasonable inference from the affidavit that controlled substances and paraphernalia, other than marijuana and marijuana pipes, would be found in defendant's home. Even if this inference were erroneous, generic descriptions of property, although not favored, have been held permissible in cases involving contraband. *See State v. Gallegos,* 712 P.2d 207, 209 (Utah 1985).

Since we conclude that there was adequate probable cause to sustain the validity of the search warrant, we need not reach the issue of whether the evidence was admissible as the result of a search conducted in "good faith." *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also State v. Thompson,* 751 P.2d 805, 809 (Utah Ct. App.1988), *cert. granted,* 765 P.2d 1277 (1988). Accordingly, we affirm the denial of defendant's suppression motion.

## PENALTY ENHANCEMENT

We next address defendant's constitutional arguments. Subsection 58–37–8(5)(a)(iii) provides that the penalty for the commission of any unlawful act involving controlled substances or drug parapherna-

lia shall be enhanced if the act is committed within 1,000 feet of any public or private elementary or secondary school.[2] Since the predicate offense in this case was possession of 100 grams (3.53 ounces) of marijuana, a class A misdemeanor, subsection 58–37–8(5)(c) increases the penalty one degree to a felony of the third degree.

Defendant attacks this greater penalty on three grounds:

Lacking a nexus, or causal connection, between the act occurring within that distance from a school activity or property, and resulting detriment to those schoolchildren, the statute violates due process, denies equal protection to those living within the prescribed distance, and constitutes an impermissible [sic] irrebutable presumption.

Prior to addressing the substance of defendant's challenges, we note that our responsibility is "to construe statutes when possible to effectuate the legislative intent and to avoid potential constitutional conflicts." *State v. Casarez,* 656 P.2d 1005, 1008 (Utah 1982); *see also Crawford v. Tilley,* 780 P.2d 1248, 1251 (1989). "It is also a well-established rule of statutory construction that statutes ... 'are endowed with a strong presumption of validity; and ... should not be declared unconstitutional if there is any reasonable basis upon which they can be found to come within the constitutional frame work [sic].'" *Murray City v. Hall,* 663 P.2d 1314, 1317 (Utah 1983) (quoting *Greaves v. State,* 528 P.2d 805, 807 (Utah 1974)).

The Utah Supreme Court has recently addressed the constitutional validity of section 58–37–8(5). *See State v. Moore,* 782 P.2d 497 (Utah 1989). Moore was convicted of unlawful distribution of methamphetamine within 1,000 feet of a middle school. Although Moore argued on appeal that his enhanced penalty under section 58–37–8(5) violated due process and equal protection,

**2.** Defendant also challenges the validity of subsection 58–37–8(5)(a)(ii), similarly enhancing penalties where the unlawful act occurs "in those portions of any building, park, stadium, or other structure or grounds which are, at the time of the act, being used for an activity sponsored by or through a school." Since defendant was not convicted under this subsection of the statute, we have no occasion to address his claim.

the supreme court affirmed his conviction. *Id.* at 502–503.

Moore had first claimed a violation of his substantive due process rights because "the statute arbitrarily and capriciously creates an irrebuttable presumption that children will be witnesses to or victims of drug transactions without regard to the actual presence or absence of children." *Moore,* 782 P.2d at 502. In rejecting this claim, the supreme court cited *United States v. Holland,* 810 F.2d 1215 (D.C.Cir. 1987), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Agilar,* 779 F.2d 123 (2d Cir.1985), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986); *United States v. Cunningham,* 615 F.Supp. 519 (S.D.N.Y.1985); and *United States v. Nieves,* 608 F.Supp. 1147 (S.D.N.Y.1985).[3]

In *Nieves,* for example, the district court held that such a presumption was distinguishable from other irrebutable presumptions determined to be invalid on due process grounds. *Id.* at 1149. The court found that the presumption was rationally related to "Congress's interest in shielding ... children from the evils of the drug trade." *Id.* The district court held that the objective of the statute was met whether children are present or absent during narcotics transactions within the prescribed distance, because the enhanced penalty "reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future." *Id.* Similarly, the Utah Supreme Court has concluded that our statute "envisions the plausible risks to the health and safety of children who may become participants in and victims of drug transactions." *Moore,* 782 P.2d at 502.

Moore also argued that "the statute violates equal protection because it treats drug dealers in small towns differently from those in large cities." *Id.* at 503.

The supreme court rejected this claim as well, applying a "rational basis" test, i.e., the law was "rationally related to the legitimate governmental interest of protecting its minors from drug-related activity and drug use...." *Id.* at 504. *See also Holland,* 810 F.2d at 1219 (The inquiry need not involve heightened scrutiny: "The focus in the equal protection challenge here is not upon the deprivation of liberty by confinement in prison, but upon the activities leading to that confinement....' The statute does not proscribe activities that are legally protected, much less 'fundamental,' ... nor has it been shown to involve any legally cognizable 'suspect' class."). The Utah Supreme Court concluded that "[t]he presumed potential risk that children could become customers or suppliers is a sufficient ground alone to rationally support the legislation." *Moore,* 782 P.2d at 504; *see also Holland,* 810 F.2d 1218–19 (purpose of the classification was to create one-thousand-foot-wide drug-free zone of protection around schools); *United States v. Ofarril,* 779 F.2d 791 (2d Cir.1985) (per curiam), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986); *United States v. Jones,* 779 F.2d 121 (2d Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986); *United States v. Falu,* 776 F.2d 46 (2d Cir.1985); *United States v. Dixon,* 619 F.Supp. 1399 (S.D.N.Y.1985); *State v. Burch,* 545 So.2d 279 (Fla.Dist.Ct.App.1989); *State v. Ogar,* 229 N.J.Super. 459, 551 A.2d 1037 (1989).

Unlike Moore's drug trafficking conviction, defendant in the instant case was convicted of unlawful possession. Section 58–37–8(5)(a) provides that "a person not authorized under this chapter who commits any act declared to be unlawful under *this section,* Chapter 37a, Title 58, the Utah Drug Paraphernalia Act, or under Chapter 37b, Title 58, the Imitation Controlled Substances Act, is upon conviction

---

**3.** The court undoubtedly examined federal case law because the legislative history of the Utah provision indicates that it was fashioned after the Controlled Substances Penalties Amendments Act of 1984. This act, codified in part at 21 U.S.C.A. § 845a(a) (Supp.1989), as amended, increases the penalty for "distributing, possess-ing with intent to distribute, or manufacturing a controlled substance" within enumerated distances from schools, colleges, universities, and certain youth facilities. The federal act and its amendments have withstood a number of constitutional challenges.

subject to the penalties and classifications [listed below].... " (Emphasis added.) The emphasized section refers not only to the unlawful sale, distribution, and manufacture of controlled substances, but also includes possession and use. We need only determine whether the broader application of the statute to defendant's drug possession is unconstitutional.

The legislative history of the Utah provision gives no indication as to whether its broader sweep than the federal law after which it was fashioned is a divergence of choice or chance. *See supra*, note 3. Although the stated intention of the Utah provision was to enable offenders to be prosecuted under either state or federal law, the House floor debate prior to the statute's passage did not specifically address the possession and use of controlled substances. Having no indications to the contrary, we can only presume that the legislature desired to encompass *all* controlled substance offenses.

We need not belabor this inquiry, however, because if "statutory language is plain and unambiguous," we "will not look beyond to divine legislative intent. Instead, we are guided by the rule that a statute should be construed according to its plain language." *Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). The plain language of subsection 58–37–8(5)(a)(iii) clearly increases punishment for convicted drug offenders, whether trafficking or not, where the offenses occur in close proximity to schools.

As discussed previously, an enhanced penalty will not be held unconstitutional if the legislative classification is not arbitrarily drawn and rests upon a rational distinction. *See State v. Clark*, 632 P.2d 841, 843–44 (Utah 1981); *see also Moore*, 782 P.2d at 502 (legislature may enhance criminal penalties for specific conduct in its discretion). Indeed, "[i]t is not unconstitutional for a state to impose a more severe penalty for a particular type of crime than the penalty which is imposed with respect to the general category of crimes to which the special crime is related or of which it is a subcategory." *Clark*, 632 P.2d at 843.

In this case, the crime for which defendant stands convicted is identical to the offense of possessing controlled substances, except for the additional element that the offense must occur within 1,000 feet of a school.

We believe that the distinction between simple possession of controlled substances and possession in proximity to a school is a valid one, reasonably related to the legislative purpose of creating a drug-free environment around our schoolchildren. Such distinctions in criminal statutes have often been upheld upon application of the rational basis test. *See Dixon*, 619 F.Supp. at 1401. It is not determinative that the unlawful activity in this case occurred in a private dwelling. The legislature has seen fit to criminalize the possession or use of controlled substances no matter where the activity occurs. "Victimless crimes, such as the possession and use of illegal drugs, do not escape the law where they are committed at home." *Bowers v. Hardwick*, 478 U.S. 186, 195, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986); *see also Holland*, 810 F.2d at 1219 ("The consequences of [drug] transactions inevitably flow from inside the [private] dwellings onto the streets and contribute directly to the violent and dangerous criminal milieu Congress sought to eliminate in the proximity of schools.").

Nor do we find determinative the fact that the Utah provision includes more drug offenses than federal law. The State's objective is legitimate and the relationship of the statute to that objective is rational. Merely because "transactions" are not required to bring the increased penalties into play is not a basis to invalidate the law. The evils attendant with controlled substances may be more visible in the presence of drug transactions, but they are by no means absent where illegal drugs are possessed and used. Moreover, drugs do not simply materialize in areas proximate to schools; they necessarily arrive there in some fashion. The statute rationally creates a "drug-free zone" to protect children from the influence of drug-related activity. "The profound harm to the minds and bodies of young people which results from drug related activity,

and not incidentally criminal activity, should be adequately prevented." *Moore*, 782 P.2d at 504.

■ Although defendant claims that section 58–37–8(5) places unbridled discretion in the State arbitrarily to prosecute some drug offenders more vigorously, the statute does not impose different penalties for identical conduct, a situation condemned in *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985). *See also State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969) (prosecutor does not have unfettered authority to select the statute having a harsher penalty if two statutes contain identical elements of a crime). Rather, subsection 58–37–8(5)(a)(iii) imposes a harsher penalty only on those drug offenders convicted under the additional element of proximity to a school.

We are thus not convinced that the penalty enhancement provision of subsection 58–37–8(5)(a)(iii) is unconstitutional, either facially or as applied to defendant.

Defendant's conviction is affirmed.

GREENWOOD and CROFT, JJ., concur.