**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert Todd WHITE, Defendant and Appellant.**

No. 920248–CA.

Court of Appeals of Utah.

April 13, 1993.

Roger K. Scowcroft, Elizabeth Holbrook (Argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

Jan Graham, State Atty. Gen., J. Kevin Murphy (Argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

BENCH, Judge:

Defendant Robert Todd White entered a conditional guilty plea to unlawful posses-sion of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58-37-8 (1990). Defendant now appeals the denial of his motion to suppress evidence obtained pursuant to an allegedly invalid search warrant. We affirm.

## FACTS

Detective Bill McCarthy of the West Valley City Police Department submitted an affidavit to Judge William A. Thorne, acting magistrate for the Third Circuit Court, requesting a no-knock nighttime search warrant for an apartment located in West Valley City. The affidavit requested permission to search the suspect apartment for drug packaging material and equipment, drug paraphernalia, currency, and records.

Detective McCarthy indicated in the affidavit that he had received information from two confidential informants. The first informant reported that over a six-month period her spouse had purchased cocaine from individuals in the suspect apartment. The informant told the officer that she had been to the suspect apartment on two occasions and had waited outside while her spouse entered the apartment and returned with cocaine that he then ingested. The informant stated that her spouse told her that individuals in the apartment were selling cocaine and that her spouse had a long history of drug abuse. He had also threatened her if she should go to the police. The spouse had also indicated to the informant that the individuals in the apartment had threatened him about being late with drug payments and about any police intervention.

The second informant, a family member of the spouse of the first informant, had also observed the spouse at the apartment. The spouse had also admitted to the second informant that he had purchased drugs in the suspect apartment. The second informant also indicated that the spouse had a long history of drug abuse.

In his affidavit, Detective McCarthy indicated that he had conducted surveillance at the suspect apartment. He stated that he had seen vehicles arrive at the apartment

and stay for a very short period of time. Such activity, according to Detective McCarthy, was consistent with the buying and selling of narcotics. Detective McCarthy also indicated that he had checked the spouse's criminal record and discovered a previous narcotics arrest.

Detective McCarthy requested a nighttime search warrant because he had been told that the busiest time of the operation was during the late evening hours. Detective McCarthy also requested a no-knock provision for the following reasons:

Your affiant firmly believes it is always safer for all participants, police officers, participants and non-participants to the sales operation if the officers have the safety of an unannounced entry. Your affiant has been on numerous narcotics search warrants [where] weapons have been readily available to the occupants. Further your affiant knows from training and experience that more and more narcotics dealers are arming themselves to protect the sales operations from other dealers/users. Further the supplier at the named premises had passed along threats to the spouse about police intervention in the illicit operation.

Detective McCarthy also claimed that the material sought in the warrant could easily be destroyed if police were required to announce their arrival and intentions.

Based on the information in the affidavit, the magistrate issued a warrant to search the suspect apartment. The warrant was authorized for service "without notice of authority or purpose" and "at any time of the day." While the warrant was served in a no-knock manner, it was not served at night, but instead at about 10:45 a.m.

The search revealed "five bundles of suspected cocaine" in defendant's possession. Defendant was charged with unlawful possession of a controlled substance with intent to distribute, a second degree felony.

Defendant moved to suppress the evidence seized during the search, claiming that the warrant was not supported by probable cause and that there was not sufficient justification for the no-knock and nighttime provisions of the warrant. Following an evidentiary hearing, the trial court denied the motion and held as follows:

The Court is satisfied that the allegations in the Affidavit, taken as a whole, are sufficient to authorize the issuance of a search warrant. The Court is further satisfied that the evidence supports a finding that the additional provision of the search warrant authorizing "no knock" execution is satisfactory. The evidence suggests that the "no knock" warrant in this case was appropriate because of the potential of the destruction of evidence, particularly where small amounts may be involved, and for the safety of not only officers executing the warrant, but the person who may be on the premises when the warrant is executed.

. . . .

Turning to the question of whether or not there is a sufficient basis to authorize the execution of the warrant during the nighttime, the Court is satisfied that any potential defects in the contents of the supporting documentation and the warrant authorizing its execution at nighttime has been mooted, inasmuch as the warrant was not executed in the nighttime, but rather during the daytime.

Defendant then pleaded guilty to a reduced charge of possession of a controlled substance and reserved the right to appeal the denial of his motion to suppress. Defendant's sentence was then suspended and he was placed on probation and required to pay fines and surcharges. Probation was stayed upon issuance of a certificate of probable cause pending the disposition of this appeal.

### ISSUES

Defendant argues that the affidavit did not justify the issuance of a no-knock nighttime search warrant. This broad argument may be divided analytically into three sub-issues: (1) Was it permissible for the trial court to find that the warrant was supported by probable cause? (2) Was it permissible for the trial court to find that the magistrate's authorization of the no-

knock provision was justified? and (3) Was it permissible for the trial court to find that the magistrate's authorization of the night-time provision was justified?

## STANDARD OF REVIEW

When issuing a search warrant, a magistrate is required "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that the contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1985); *accord State v. Babbell*, 770 P.2d 987, 991 (Utah 1989); *State v. Stromberg*, 783 P.2d 54, 56 (Utah App.1989).

 When a search warrant is challenged on the basis of lacking probable cause for issuance, "the fourth amendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination." *Babbell*, 770 P.2d at 991; *accord Stromberg*, 783 P.2d at 57. Instead, the reviewing court is required to give great deference to the magistrate's determination, and "will find the warrant invalid only if the magistrate, given the totality of the circumstances, lacked a 'substantial basis' for determining that probable cause existed." *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993) (quoting *Babbell*, 770 P.2d at 991); *accord State v. Hansen*, 732 P.2d 127, 129 (Utah 1987); *State v. Leonard*, 825 P.2d 664, 673 (Utah App.1992). The trial court examines the affidavit "in its entirety and in a common-sense fashion." *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985).

 Our review of the trial court's determination focuses on whether it was permissible for the trial court to find that the magistrate had probable cause to issue the warrant under the *Gates* test. We do not conduct our own de novo review of the magistrate's decision. *State v. Miller*, 740 P.2d 1363, 1366 (Utah App.), *cert. denied*, 765 P.2d 1277 (1987) (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331)). We defer to the trial court's finding that the magistrate acted properly. *Stromberg*, 783 P.2d at 57.

## ANALYSIS

### Probable Cause

Defendant argues that the search warrant was not supported by probable cause and consequently the trial court erred in not granting his motion to suppress. Specifically, defendant argues that the affidavit was ambiguous as to the precise apartment to be searched,[1] and that the affidavit fails to make an "adequate showing of the reliability, veracity and basis of knowledge of the confidential informants."

 Defendant argues that we should not apply the "totality of the circumstances analysis" set forth in *Gates*, 462 U.S. at 230–31, 103 S.Ct. at 2328. Instead, he urges us to apply a more rigid standard under Article I, Section 14 of the Utah Constitution and examine the warrant for probable cause without any deference to the magistrate's determination. Defendant, however, failed to raise this argument in the trial court. We are governed by the general principle that matters not placed in issue before the trial court cannot be raised for the first time on appeal. *State v. Webb*, 790 P.2d 65, 77 (Utah App. 1990). "[T]he proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not, as typically happens and as happened here, for the first time on appeal." *State v. Bobo*, 803 P.2d 1268, 1273 (Utah App.1990). We therefore do not address, for the first time on appeal, defendant's novel argument that we should adopt a different standard of review under the Utah Constitution.

---

**1.** Defendant failed to raise this argument in either the motion to suppress or the hearing on the motion. We therefore do not address this argument for the first time on appeal. *See State*

*v. Webb*, 790 P.2d 65, 77 (Utah App.1990) (matters not placed in issue at trial cannot be raised for the first time on appeal).

■ Defendant's federal constitutional arguments are without merit. Defendant argues that the affidavit failed to demonstrate the confidential informants' veracity, reliability, and basis of knowledge as required by *State v. Bailey*, 675 P.2d 1203, 1205–06 (Utah 1984). This issue was addressed in *Miller*, wherein this court stated:

> Although no longer a required test under the *Gates* standard, the veracity or reliability of an informant is still a relevant consideration when reviewing the totality of the circumstances. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328; *see also State v. Hansen*, 732 P.2d 127, 130 (Utah 1987). However, the average neighbor witness is not the type of informant in need of independent proof of reliability or veracity. Rather, "[v]eracity is generally assumed when the information comes from an 'average citizen who is in a position to supply information by virtue of having been a crime victim or witness.'" *State v. Harris*, 671 P.2d 175, 180 (Utah 1983) (quoting LaFave, *Search and Seizure* § 3.3 (1978)).

*Miller*, 740 P.2d at 1366; *see also State v. Brown*, 798 P.2d 284, 286 (Utah App.1990) (reliability and veracity are not questioned where citizen informers are concerned because "citizen informers, unlike police informers, volunteer information out of concern for the community and not for personal benefit"). Thus, the legal guidelines governing probable cause determinations do not mandate that a magistrate independently inquire into the veracity, reliability, and basis of knowledge of citizen informers.

In the instant case, the confidential informants relied upon by Detective McCarthy were of the type discussed in *Miller*. The informants were not only concerned about the well-being of the community, but also with that of a close relative whom they had witnessed entering the suspect apartment allegedly to purchase cocaine. Therefore, it was permissible for the trial court to consider the information received from the confidential informants, as set forth in the affidavit, even in the absence of independent inquiry into the veracity, reliability, and basis of knowledge of the informants.

■ Furthermore, the affidavit actually presented sufficient information to demonstrate the veracity, reliability, and basis of the informants' knowledge. The affidavit indicated that the informants, independently of each other, witnessed separate incidences where the spouse purchased cocaine from individuals in the suspect apartment. Both informants also indicated independently to Detective McCarthy that the spouse had a long history of drug abuse. The informants therefore corroborated and buttressed the reliability of each other's information. Further, the affidavit stated that the informants' information was from first-hand personal observation. *See Stromberg*, 783 P.2d at 57.

Additionally, Detective McCarthy's investigation revealed independent circumstantial evidence that supported the information provided by the informants. Detective McCarthy discovered that the spouse had a criminal narcotics record. Detective McCarthy also observed vehicles arrive and stay at the suspect apartment for a short period of time, consistent with a pattern of narcotics trafficking. *See e.g., United States v. Buchannon*, 878 F.2d 1065, 1067 (8th Cir.1989) (a brief visit to a suspected drug house "conformed to the patterns of the drug trade"). Thus, Detective McCarthy's independent investigation also served to buttress the reliability of the informants' information.

Since a magistrate may assume the veracity, reliability, and basis of knowledge of citizen informers, it was permissible for the trial court to find that the affidavit provided sufficient probable cause to support the issuance of a search warrant. We do not, therefore, disturb the trial court's ruling.

### No–Knock Warrant

■ Defendant argues that the affidavit fails to satisfy the statutory prerequisites for the issuance of a no-knock warrant under Utah Code Ann. § 77–23–10 (1990). This statute provides in relevant part:

When a search warrant has been issued authorizing entry into any building, room, conveyance, compartment or other enclosure, the officer executing the warrant may use such force as is reasonably necessary to enter:

. . . .

(2) Without notice of his authority and purpose, if the magistrate issuing the warrant directs in the warrant that the officer need not give notice. The magistrate shall so direct only upon proof, under oath, that *the object of the search may be quickly destroyed, disposed of, or secreted, or that physical harm may result to any person if notice were given.*

(Emphasis added.) Defendant claims that the affidavit failed to provide sufficient proof that the objects of the search (i.e., drug packaging material and equipment, drug paraphernalia, currency and records) could be quickly destroyed, or that physical harm could result to someone if notice was given.

■ Just as a trial court does not revisit the issue of probable cause when reviewing a magistrate's issuance of a warrant, a trial court does not conduct a de novo review of a magistrate's determination that a search warrant should be served in a no-knock fashion. Instead, the trial court reviews the no-knock authorization for reasonableness. *See State v. Rosenbaum*, 845 P.2d 962, 965 (Utah App.1993). This is consistent with the magistrate's obligation to defer to law enforcement officers regarding the manner in which search warrants should be served. *See Dalia v. United States*, 441 U.S. 238, 256, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979) (question of how to serve properly authorized search warrants "is generally left to the discretion of the executing officers," subject to a reasonableness requirement); *Rosenbaum*, 845 P.2d at 966 n. 2 (criteria for no-knock authorization is less stringent than that required for the initial probable cause determination).

Inasmuch as the State has conceded that Detective McCarthy's affidavit did not specify that he expected to find disposable quantities of drugs, we base our analysis on the safety prong of section 77–23–10(2). The affidavit in this case states that the first informant indicated that her spouse had been threatened by individuals in the apartment about being late with drug payments, and about any police intervention in the illicit operation. Detective McCarthy also requested a no-knock warrant because, as a result of his training and experience, he knew that drug dealers are typically armed and that it was safer for all individuals involved if the police are not required to announce their entry. Based on the threats and Detective McCarthy's experience in serving drug related warrants, the magistrate could reasonably find that no-knock service was justified because physical harm to the officers and others could result if they announced their entry. *See Rosenbaum*, 845 P.2d at 966 (affirming no-knock provision where informant had observed firearms in suspect apartment and based on affiants experience in serving such warrants); *Miller*, 740 P.2d at 1367 (affirming no-knock provision where affidavit stated that two large watchdogs, which might pose a hazard to officers, were present at the residence).

The trial court concluded that:

While the Court expressed concerns in its questioning of the State's witnesses in this matter regarding the concept of safety, the Court does not claim any expertise in police procedures, nor does the Court claim any expertise in the execution of "no knock" warrants and the hazards related thereto, and the evidence the Court has before it is from a police professional who has expressed his opinions, stated the reasons therefore, and the Court is not at liberty to ignore that evidence, absent some legitimate reason to do so, and no legitimate legal reason appears to exist.

Based upon the foregoing, the Court finds that there is sufficient basis for the issuance of the "no knock" special provisions of this warrant.

Defendant has not shown how the trial court erred in its finding that the magistrate's decision to authorize no-knock ser-

vice was justified. We therefore do not disturb the trial court's ruling upholding the no-knock authorization.

### Nighttime Provision

 Defendant further argues that the affidavit fails to satisfy the statutory prerequisites for the issuance of a nighttime search warrant.[2] At the hearing on the motion to suppress, it was determined that the search warrant was served during the daytime, even though it was authorized for service any time of day. In *State v. Rowe*, 850 P.2d 427, 429 (Utah 1992), the supreme court held that absent a fundamental violation of rights, suppression is only required if the search would not have otherwise happened or the search was the result of deliberate disregard of a provision of the rule.

Defendant has not shown how he was prejudiced or that there was deliberate disregard on the part of the police. We therefore need not reach the merits of defendant's claim, because actual service of the warrant during the day rendered harmless any alleged insufficiency of the nighttime authorization. *See, e.g., State v. Sherrick*, 98 Ariz. 46, 54, 402 P.2d 1, 9 (1965) (defendant was not prejudiced and evidence not suppressed when a search warrant with an improperly authorized nighttime provision was actually served during the daytime); *see also People v. Barber*, 113 Misc.2d 365, 449 N.Y.S.2d 140, 145 (N.Y.App.Div.1982) (evidence was not suppressed where the police did not rely on an improper no-knock authorization, but instead announced their presence when serving the warrant). Accordingly, we conclude that the trial court properly held that any potential defect in the magistrate's authorization of nighttime service was harmless.

### CONCLUSION

The trial court's holding that the search warrant was supported by sufficient proba-

ble cause was permissible. The trial court's holding that the no-knock provision of the affidavit was properly authorized was likewise permissible. Finally, the trial court correctly held that any potential defect in the magistrate's authorization of a nighttime provision was rendered harmless by actual service of the warrant during the daytime.

Defendant's conviction is therefore affirmed.

JACKSON, J., concurs.

GARFF, J., concurs in result.

**2.** Utah Code Ann. § 77–23–5(1) (1991) governs nighttime service of search warrants and states in relevant part:

 The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits or oral testimony state a

reasonable case to believe a search is necessary in the night to seize the property prior to it being concealed, destroyed, damaged or altered, or for other good reason; in which case he may insert a direction that it be served any time of the day or night.