2003 UT App 82

**STATE of Utah, Plaintiff and Appellee,**

v.

**Anthony A. SADDLER, Defendant and Appellant.**

**No. 20020119–CA.**

Court of Appeals of Utah.

March 20, 2003.

Linda M. Jones and Shannon N. Romero, Salt Lake Legal Defender Association, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey T. Colemere, Assistant Attorney General, for Appellee.

Before BILLINGS, Associate Presiding Judge, DAVIS and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Anthony A. Saddler (Saddler) appeals his conviction for unlawful possession of a controlled substance with intent to distribute, a third degree felony in violation of Utah Code Ann. § 58–37–8 (Supp.2000). Saddler challenges the trial court's order denying his motion to suppress evidence and upholding the constitutionality of the search warrant. We reverse and remand.

## BACKGROUND

¶ 2 On June 15, 2000, Detective Bill McCarthy (McCarthy) obtained a warrant to search Saddler's residence for marijuana, cocaine, and related items. In issuing the search warrant, the magistrate relied on an affidavit provided by McCarthy, who prepared the affidavit using information from a confidential informant (CI). The affidavit established McCarthy's nineteen years of general police experience and his specific experience and training in narcotics investigation. It also stated "CI has not been promised nor paid for any of the information provided," and claimed "CI ... provided the information out of a sense of guilt and desire to stop the sales and usage of controlled substances into the community." Further, it requested "the courts not ... require [McCarthy] to publish the CI's name," for McCarthy "believe[d] ... the CI [could] be harmed if CI's name were published."

¶ 3 According to the affidavit, CI told McCarthy the following:

CI has known the suspect, Saddler for over one year;

CI has observed the suspect use cocaine and marijuana on numerous occasions during the last year;

CI has used marijuana with the suspect on several occasions;

CI has been to the premises numerous times, the most recent being within the last week to ten days, and observed approximately three to four pounds of marijuana;

CI has observed three scales inside the home, that the suspect uses to weigh out repackaged marijuana for resale;

CI has observed cocaine inside the premises, along with packaging material;

CI has observed the suspect carry marijuana and cocaine on his person;

The suspect has told CI that the suspect sells marijuana and cocaine;

CI has observed the suspect sell and use controlled substances, inside the named premises;

CI has been told by the suspect that the suspect recently purchased the listed premises;

CI states that the suspect's only legitimate source of income is from a part-time waiter's job at a Salt Lake City restaurant, BACI's;

CI states that the suspect sells controlled substances to be able to afford his own usage and as a separate source of income;

CI provided a description of the home, a vehicle frequently used by the suspect (female companion of suspect), and hours of operation for the suspect;

CI states that the suspect is home infrequently and usually during the late evening hours.

¶ 4 The affidavit also describes McCarthy's corroboration efforts. On June 14 and 15,

2000, McCarthy conducted surveillance of Saddler's home between 8:00 p.m. and 6:00 a.m. and did not observe anyone. At an unspecified time on June 15, McCarthy observed some "short term traffic," which he believed was "drug related." West Valley Police stopped one of the vehicles leaving the premises and found the driver in possession of one-half ounce of marijuana. Police found no drug paraphernalia in the vehicle or on the driver's person, which indicated to McCarthy "the marijuana was purchased from [Saddler's] premises."

¶ 5 McCarthy also "observed vehicles described by CI at [Saddler's] premises and the registered owner was a[sic] described by CI." Finally, McCarthy checked BACI's restaurant on June 15, and Saddler "was not at work and it was unknown when he was scheduled to return."

¶ 6 After obtaining and executing the search warrant, on June 15, police seized approximately ten ounces of marijuana and one gram of cocaine, along with drug packaging material, triple beam scales, and $478.00 in cash. Saddler subsequently filed a motion to suppress the evidence. After the trial court denied the motion, Saddler pleaded guilty to unlawful possession of a controlled substance with intent to distribute, conditional upon his right to appeal the suppression issue. *See State v. Sery,* 758 P.2d 935, 938–39 (Utah Ct.App.1988).

## ISSUE AND STANDARD OF REVIEW

 ¶ 7 The sole issue is whether the trial court erred by denying Saddler's motion to suppress evidence and concluding McCarthy's affidavit established probable cause to search Saddler's residence. "[T]his court, like the reviewing court below, is bound by the contents of the affidavit, we therefore need not defer to the trial court's finding. . . ." *State v. Deluna,* 2001 UT App 401,-¶ 9, 40 P.3d 1136 (quotations and citation

omitted), *cert. denied,* 2002 Utah LEXIS 150. Instead, " 'we make an independent review of the trial court's determination of the sufficiency of the written evidence.' " *Id.* (quoting *State v. Weaver,* 817 P.2d 830, 833 (Utah Ct.App.1991)). "However, 'the [F]ourth [A]mendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination[.] [I]nstead, it requires only that the reviewing court conclude "that the magistrate had a substantial basis for . . . [determining] that probable cause existed." ' " *Id.* (alterations in original) (quoting *State v. Babbell,* 770 P.2d 987, 991 (Utah 1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983))). We therefore "pay great deference to the magistrate's determination." *State v. Vigh,* 871 P.2d 1030, 1033 (Utah Ct.App.1994).[1]

## ANALYSIS

 ¶ 8 Saddler argues McCarthy's affidavit supporting the search warrant did not establish probable cause for the search. We agree.

¶ 9 The Fourth Amendment of the United States Constitution guarantees that "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. "[W]hen a search warrant is issued on the basis of an affidavit, that affidavit must contain specific facts sufficient to support a determination by a neutral magistrate that probable cause exists." *State v. Babbell,* 770 P.2d 987, 990 (Utah 1989). "It is well settled that Utah courts employ the 'totality-of-the-circumstances test' articulated in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) to determine the sufficiency of an affidavit supporting a search warrant." *State v. Vigh,* 871 P.2d 1030, 1033 (Utah Ct.App.1994). Thus, "[p]robable cause is determined by a magistrate who 'make[s] a practical common-sense decision whether,

---

1. The dissent is concerned that we do not give sufficient deference to the magistrate's determination. "We pay great deference to the magistrate's determination," *State v. Vigh,* 871 P.2d 1030, 1033 (Utah Ct.App.1994); because " '[a] grudging or negative attitude toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursu-

ant to a warrant.' " *State v. Deluna,* 2001 UT App 401,¶ 10, 40 P.3d 1136, *cert. denied,* 2002 Utah LEXIS 150 (citation omitted). However, our preference for warrants does not extend to warrants that are not based on probable cause. We will not give deference to the magistrate if there is no "substantial basis for . . . [determining] that probable cause existed." *Id.* at ¶ 9.

given all the circumstances set forth in the affidavit[,] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id.* (second alteration in original) (emphasis omitted) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332).

¶ 10 "Where, as here, information obtained from [an] informant[ ] is the primary support for the search warrant, an analysis of the totality of the circumstances requires us to consider the three factors articulated by this court in *Kaysville City v. Mulcahy,* 943 P.2d 231, 235–36 (Utah Ct.App.1997)." *State v. Deluna,* 2001 UT App 401, ¶ 11, 40 P.3d 1136, *cert. denied,* 2002 Utah LEXIS 150; *see State v. Valenzuela,* 2001 UT App 332, ¶¶ 16–17, 37 P.3d 260 (extending application of *Mulcahy* factors to probable cause determinations). We now consider those three factors.

I. Type of Informant/Basis of Knowledge

¶ 11 The first factor is "the type of tip or informant involved." *Kaysville City v. Mulcahy,* 943 P.2d 231, 235 (Utah Ct.App. 1997). "After all, '[n]ot all tips are of equal value in establishing [probable cause].' " *Id.* (alteration in original) (citation omitted). "Factors to consider in determining whether probable cause exists include an informant's veracity, reliability and basis of knowledge." *State v. Purser,* 828 P.2d 515, 517 (Utah Ct.App.1992) (citing *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)) (other citations omitted); *see also State v. Droneburg,* 781 P.2d 1303, 1306 (Utah Ct.App.1989) ("Although the veracity, reliability, and basis of knowledge of confidential informants are no longer strict prerequisites for establishing probable cause, they are still relevant considerations, among others, in determining the existence of probable cause under a totality-of-the-circumstances." (quotations and citations omitted)).

¶ 12 In this case, the basis of knowledge portion is satisfied.[2] Basis of knowledge is satisfied where the informant speaks from personal observation. *See Purser,* 828 P.2d at 517. Here, the affidavit sets forth information based on CI's personal observations. For instance, the affidavit notes that CI "observed [Saddler] use cocaine and marijuana," "observed approx. 3 to 4 pounds of marijuana," and "observed cocaine inside [Saddler's] premises."

¶ 13 However, the veracity and reliability portions are not satisfied. Generally, "an ordinary citizen-informant needs no independent proof of reliability or veracity." *State v. Deluna,* 2001 UT App 401, ¶ 14, 40 P.3d 1136, *cert. denied,* 2002 Utah LEXIS 150 (quotations and citations omitted). A citizen-informant is "an average citizen who is in a position to supply information by virtue of having been a crime victim or witness." *State v. White,* 851 P.2d 1195, 1199 (Utah Ct.App.1993) (quotations and citations omitted). Such an informant "thereafter relates to the police what he knows as a matter of civic duty." *State v. Evans,* 692 So.2d 216, 219 (Fla.Dist.Ct.App.1997) (quotations and citations omitted) (cited for this proposition by *Mulcahy,* 943 P.2d at 235 n. 2). Alternatively, a police-informant (or criminal-informant) is "one who gains information through involvement in criminal activity or who is ' "motivated ... by pecuniary gain," ' " and thus is "lower on the reliability scale." *Mulcahy,* 943 P.2d at 235 n. 2 (quoting *Evans,* 692 So.2d at 219).

¶ 14 In this case, we do not know whether CI was a citizen- or a police-informant. However, we do know that CI "used marijuana with [Saddler] on several occasions." Thus, we know CI was part of the criminal environment, lowering his veracity and reliability. We also know that CI "provided the information out of a ... desire to stop the sales and usage of controlled substances into the community," and that CI was "[neither]

---

2. The dissent argues that we dismiss the basis of knowledge portion too quickly in our analysis of the totality of the circumstances. This is not true. We acknowledge that the basis of knowledge portion of the test is satisfied. However, the basis of knowledge portion alone does not establish probable cause in the absence of information concerning CI's veracity and reliability. While basis of knowledge tells us how CI acquired his information, it does not tell us whether he was qualified to assess the information, whether he relayed the information accurately, or whether he is trustworthy.

promised nor paid for any of the information provided." Although this information bolsters reliability and veracity in citizen-informants, *see Purser*, 828 P.2d at 517 (assuming reliability and veracity for citizen-informant who volunteered the information and "receive[d] nothing from police in exchange for the information"), we do not know whether CI qualified as a citizen-informant or volunteered the information to police. Further, we fail to see how the conclusory statement that CI is providing the information out of a sense of guilt and a desire to stop the sale of controlled substances significantly bolsters his veracity and reliability when he is a participant in the criminal environment and has not indicated a remorse for his past participation or a determination to avoid future involvement. *See People v. Kershaw*, 147 Cal.App.3d 750, 195 Cal.Rptr. 311, 314 (1983) (noting that informants who are "criminals, drug addicts or professional 'stool pigeons'" may be motivated to volunteer information not only for promises or payments, but also for "revenge or the hope of eliminating criminal competition"), *superceded by statute on other grounds, People v. Burch*, 188 Cal. App.3d 172, 232 Cal.Rptr. 502 (1986).

¶ 15 Also important to veracity and reliability is whether the informant is anonymous. " '[B]ecause an anonymous caller's basis of knowledge and veracity are typically unknown,' anonymous tips are toward 'the low-end of the reliability scale.' " *Mulcahy*, 943 P.2d at 235 (citation omitted). Informants who "g[i]ve their full names," thus "subject[ing] themselves to a penalty for providing false information," *Deluna*, 2001 UT App 401 at ¶ 15, 40 P.3d 1136, are more reliable than informants who "hid[e] behind the cloak of telephonic [or other] anonymity" so that their identities cannot be traced. *State v. McCloskey*, 453 N.W.2d 700, 703–04 (Minn.1990).

¶ 16 Here, we do not know whether CI and McCarthy met face-to-face or communicated by telephone or letter. Consequently, we do not know whether McCarthy ever, using his police training and experience, had the opportunity to evaluate CI's truthfulness. We also do not know whether CI told McCarthy his name.[3] Consequently, we do not know whether CI subjected himself to the penalty of providing false information. Similarly, we do not know whether CI had ever provided McCarthy information before and whether this information proved reliable. *See State v. Bailey*, 675 P.2d 1203, 1206 (Utah 1984) (noting that information in the affidavit showing "the informant had previously given truthful information to the police concerning the existence of contraband" is "an accepted method for establishing an informant's veracity").

¶ 17 Next, an informant's reliability and veracity are improved where he provides information against his penal interest. *See United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971) (holding statements "against the informant's penal interest" "carr[ied] their own indicia of credibility"); *In re Shon Daniel K.*, 125 N.M. 219, 959 P.2d 553, 558 (Ct.App.1998) (noting statements against penal interest are one indication of informant reliability).

¶ 18 Here, CI made no statement against penal interest. Although he did admit to using marijuana with Saddler on several occasions, this admission means nothing if CI did not reveal his identity, thus subjecting himself to the danger of prosecution. Furthermore, even if we knew CI's identity, his statement would still not be an admission against penal interest because there is no other evidence against him. *See State v. Archuleta*, 850 P.2d 1232, 1241 n. 24 (Utah 1993) (noting the "corpus delicti rule states that a person may not be convicted of a crime if no independent evidence, outside of the defendant's own statement, exists").

¶ 19 Finally, an informant's veracity and reliability may be " 'boosted by the detail with which the informant described his per-

---

3. The State argues that we should defer to the trial court's inference that CI was not anonymous. *See State v. Babbell*, 770 P.2d 987, 992 (Utah 1989) (acknowledging ambiguity of an affidavit, but deferring to magistrate's "reasonable construction" of that ambiguity). We disagree. It is not reasonable to infer, without more information, that CI, who was too afraid to allow his name to be published in the affidavit, was not also too afraid to give his name to the police officer drafting the affidavit.

sonal observation' of the [crime]." *Bailey*, 675 P.2d at 1206. Here, the affidavit provides little more than an outline of what CI told McCarthy. We do not know the type of relationship CI had with Saddler or how often and for what purpose CI visited Saddler. Also, although CI says he saw marijuana, cocaine, packaging materials, and scales in the home, we do not know how much marijuana and cocaine he saw, when he saw it, or where it was located.[4] Finally, aside from the conclusory statement that CI provided a description of the home, a vehicle frequently used by Saddler, and Saddler's hours of operation, we do not know anything about CI's actual description of these facts.

## II. Information Detail

 ¶ 20 "The second *Mulcahy* factor we must consider is whether 'the informant gave enough detail about the observed criminal activity to support a [warrant].' " *State v. Deluna*, 2001 UT App 401,¶ 19, 40 P.3d 1136 (alteration in original) (citation omitted), *cert. denied*, 2002 Utah LEXIS 150. "It is well established that a warrant cannot issue solely on the strength of 'a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause.' " *State v. Babbell*, 770 P.2d 987, 992 (Utah 1989) (citation omitted). Moreover, judges should be reluctant to base a probable cause determination on poorly drafted affidavits. *See id.* at 992 n. 3 (noting the finding of probable cause was "a very close question" where the affidavit included the witnesses' description of a truck but not

the officer's description of the truck he said matched the witnesses' description). "The better approach would be to require that an affiant take the simple but critical additional step of clearly and unambiguously stating" the detail provided by the informant. *Id.* "A few short minutes spent in more carefully preparing [an] affidavit would have ensured the protection of the accused's constitutional rights while saving a substantial amount of time for the courts and parties." *Id.*

 ¶ 21 Here, we do not know how much detail CI gave. Rather than provide a detailed description of CI's statement in the affidavit, McCarthy provided a conclusory outline of CI's statement. We do not know how CI knew Saddler or when and how often CI visited Saddler's residence. Nor do we know how often or how recently CI observed controlled substances in Saddler's residence.[5] We also do not know what detail CI gave about Saddler's residence, routine, hours of operation, vehicles, clients, or clients' vehicles.[6]

## III. Confirmation by Police Officer

 ¶ 22 "The final *Mulcahy* factor is whether the police officer independently confirms the informants' information." *State v. Deluna*, 2001 UT App 401,¶ 20, 40 P.3d 1136, *cert. denied*, 2002 Utah LEXIS 150. Corroboration "means, in light of the circumstances, [the officer] confirms enough facts so that he may reasonably conclude that the information provided is reliable." *Kaysville City v. Mulcahy*, 943 P.2d 231, 236 (Utah Ct.App.

4. We know that at some point, CI observed what he described as three to four pounds of marijuana at Saddler's premises. However, we do not know when CI made this observation. Although the affidavit says CI had been to the house within the last seven to ten days, we cannot reasonably infer that it was during this visit that CI saw the marijuana.

5. The State argues that probable cause exists even though the affidavit fails to provide specific dates and time periods because it establishes a course of conduct. We disagree. " '[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.' " *State v. Stromberg*, 783 P.2d 54, 57 (Utah Ct.App.1989) (citation omitted). Although CI uses the present tense to say Saddler

"sells controlled substances," *see State v. Anderton*, 668 P.2d 1258, 1261 (Utah 1983) (holding information in search warrant not stale because the language used was "couched ... in the present tense which describes ongoing criminal conduct"), CI only talks about Saddler using and selling controlled substances *from his home* in the past tense and does not provide sufficient detail for us to ascertain whether the activity was of a protracted and continuous nature.

6. We do know CI said Saddler was home infrequently and usually during the late evening hours. Although seemingly helpful, this detail was discounted by McCarthy's own attempt at corroboration. When McCarthy conducted surveillance of Saddler's home during the late evening hours (8:00 p.m. to 6:00 a.m.), he did not gather any corroborating information.

1997). A police officer " 'may corroborate the tip either by observing the illegal activity or by finding [the material facts] substantially as described by the informant.' " *Id.* (citations omitted).

¶ 23 Here, McCarthy's corroboration was not helpful. First, McCarthy conducted surveillance of Saddler's premises during the hours CI said Saddler was home. Between 8:00 p.m. and 6:00 a.m., McCarthy saw nothing to corroborate CI's information.

¶ 24 Second, at some point the next day, McCarthy says he saw short-term traffic that he believed to be drug related.[7] One car was stopped and one-half ounce of marijuana was found on the driver, which McCarthy believed was purchased at Saddler's home because no drug paraphernalia was found. However, McCarthy provides only conclusory information about this corroborative effort. *See State v. Babbell,* 770 P.2d 987, 992 (Utah 1989) ("It is well established that a warrant cannot issue solely on the strength of 'a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause.' " (citation omitted)). He does not state how many vehicles he saw visit Saddler's home, whether any of these vehicles arrived during Saddler's alleged hours of operation, whether any of these vehicles or their drivers were described by CI, whether the stopped person was a person described by CI or was driving a vehicle described by CI, or how long the stopped person was at Saddler's home.

¶ 25 Third, McCarthy observed vehicles described by CI at Saddler's premises whose registered owner was described by CI. Again, McCarthy provides no detail as to what type of vehicles were present, how many vehicles he observed, whether they were part of the short-term traffic, or whether they were present during Saddler's alleged hours of operation. *See id.*

¶ 26 Finally, McCarthy visited BACI's, Saddler's place of employment, where he learned Saddler was not at work and the person he spoke to did not know when Saddler was scheduled to work next. With more detail, this information may have provided important corroborative detail. However, as is, the information is practically useless. Although McCarthy established that Saddler worked at BACI's, we do not know who McCarthy spoke to or whether that person was in a position to know Saddler's schedule. We also do not know whether the person McCarthy spoke to thought it was unusual that Saddler was not currently at work or whether the person thought Saddler's work schedule in general was unusual.

## CONCLUSION

¶ 27 Under the totality of the circumstances, we are convinced that the search warrant affidavit in this case failed to establish probable cause for the search of Saddler's home. Although the affidavit sufficiently established CI's basis of knowledge, it failed to establish CI's veracity and reliability. Moreover, the detail and corroboration included in the affidavit were not enough to establish probable cause in the absence of a showing of veracity and reliability. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress the seized evidence. "Since an error amounting to a violation of the federal constitution requires reversal unless it is harmless beyond a reasonable doubt, we reverse [Saddler's] conviction[ ]." *State v. Droneburg,* 781 P.2d 1303, 1306 (Utah Ct.App.1989).

¶ 28 Saddler's conviction is reversed and the case is remanded for proceedings consistent with this opinion.

¶ 29 I CONCUR: PAMELA T. GREENWOOD, Judge.

BILLINGS, Associate Presiding Judge (dissenting):

¶ 30 I respectfully dissent. I would conclude that under the "totality-of-the-circumstances test" required by *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the magistrate had a "substantial basis for ... [determining] that

---

**7.** Although the dissent concludes McCarthy saw the short-term traffic during the early morning

hours, no actual time is provided by the affidavit.

probable cause existed." *State v. Deluna*, 2001 UT App 401,¶ 9, 40 P.3d 1136 (quotations and citations omitted).

¶ 31 As a threshold matter, I disagree with the majority's application of the facts to controlling law. First, I conclude the affidavit establishes CI's reliability. As the majority acknowledges, CI's basis of knowledge was strong. The affidavit set forth facts personally observed by CI over a one-year period: CI observed Saddler using marijuana and cocaine; CI used marijuana with Saddler; CI within the last ten days observed three to four pounds of marijuana; CI observed scales in Saddler's home that Saddler allegedly used to weigh and package marijuana for re-sale; CI stated that Saddler admitted to him that he sells marijuana and cocaine; and CI observed Saddler selling controlled substances inside the named premises.

¶ 32 However, the majority dismisses this strong basis of knowledge and claims the veracity and reliability prongs are not satisfied. I disagree. Veracity and reliability can be buttressed by a high degree of detail presented by CI in the affidavit and independent corroboration of such detail by the police. *See State v. Purser*, 828 P.2d 515, 517 (Utah Ct.App.1992). Both are present here.

¶ 33 CI admittedly used drugs with Saddler in the past. However, CI was "[neither] promised nor paid for any of the information provided." This bolsters CI's reliability and veracity. *See State v. Vigh*, 871 P.2d 1030, 1034 (Utah Ct.App.1994) ("Because the confidential informant here received nothing in exchange for information about [the] illegal activities, the magistrate properly assumed that the informant was reliable."); *State v. Purser*, 828 P.2d 515, 517 (Utah Ct.App.1992) (assuming reliability and veracity for citizen informant who "receive[d] nothing from the police in exchange for the information" (citations omitted)).

¶ 34 I further disagree with the majority's claim that we do not know if CI volunteered the information to Officer McCarthy. On the contrary, a fair reading of the affidavit establishes that he did. The affidavit plainly states that CI told Officer McCarthy the information out of "a sense of guilt and a desire to stop the sales and usage of controlled substances in the community." Further, the majority refuses to acknowledge CI told Officer McCarthy CI's name and was therefore not anonymous. Where an affidavit is ambiguous, we must defer to the magistrate where, given the affidavit's language, the magistrate could reasonably construe a meaning that favors a probable cause determination. *See State v. Babbell*, 770 P.2d 987, 992 (Utah 1989) (acknowledging ambiguity of an affidavit, but deferring to magistrate's "reasonable construction" of that ambiguity). Although Officer McCarthy did not directly state that he knew CI's name, a magistrate could reasonably construe Officer McCarthy's knowledge of CI's name from the affidavit's language. The affidavit clearly asks that the court not require Officer McCarthy to "publish the CI's name." One cannot publish a name one does not know.

¶ 35 The majority is hyper-technical in claiming CI's admission that he used drugs with Saddler was not against his penal interest and thus did not bolster his reliability. *See United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971) (holding statements "against the informant's penal interest" "carr[ied] their own indicia of credibility"). As previously stated, in my view, the affidavit establishes that CI did reveal his identity to the officer. I also disagree with the majority's conclusion that, because there is no other evidence against CI, there was no admission against penal interest. We simply do not know if there is other evidence against CI, nor should we expect such evidence in the affidavit. CI made incriminating statements with both the possibility that such statements could be investigated and the possibility that other evidence could be found. "People do not lightly admit a crime and place critical evidence in the hands of police in the form of their own admissions." *Id.* at 583, 91 S.Ct. at 2082. In *Harris*, the Supreme Court similarly found, without more, that an informant's disclosure that he purchased illegal whiskey from the defendant over a period of two years was a statement against penal interest that

"carr[ied][its] own indicia of credibility."[8] 403 U.S. at 575, 583, 91 S.Ct. at 2078, 2082.

¶ 36 As the majority acknowledges, an informant's veracity and reliability may be "boosted by the detail with which the informant described his personal observation of the [crime]." *State v. Bailey*, 675 P.2d 1203, 1206 (Utah 1984) (quotations and citation omitted). However, the majority finds the description of the ongoing use and sale of drugs over a period of a year, including the observation of scales, packaging material, and three to four pounds of marijuana within the previous ten days,[9] to be insufficient detail. The majority requires the affidavit recite, for example, more detail about Saddler's residence, such as, presumably, where in the house CI saw the materials. The Fourth Amendment's search warrant requirements are not that burdensome. We "pay great deference to the magistrate's determination," *Vigh*, 871 P.2d at 1033, because " '[a] grudging or negative attitude ... toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Deluna*, 2001 UT App 401 at ¶ 10, 40 P.3d 1136 (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).

¶ 37 The majority further complains CI's statements are conclusory. Again I disagree. The sufficient details include CI knowing Saddler for over one year and observing cocaine and marijuana in the home, including three to four pounds of marijuana within the previous ten days; observation of scales and packaging material; observation of Saddler selling drugs from the home; and numerous observations of Saddler using drugs in the home. Where, as here, " 'the affidavit properly recites facts indicating activity of a protracted and continuous nature,

a course of conduct, the passage of time becomes less significant.' " *State v. Stromberg*, 783 P.2d 54, 57 (Utah Ct.App.1989) (citation omitted). In *Stromberg*, for instance, the court noted with approval under similar facts that "[t]he informant observed marijuana use and marijuana paraphernalia in the home on not one occasion, but on numerous visits to the home." *Id.*

¶ 38 Even if veracity and reliability were weak, this is not fatal under the totality-of-the-circumstances test. *See State v. Hansen*, 732 P.2d 127, 130 (Utah 1987) (noting "an informant's 'reliability' and 'basis of knowledge' are but two relevant considerations, among others, in determining the existence of probable cause," and concluding "[a] weakness in one [area] or the other is not fatal to the warrant so long as" the affidavit, as a whole, provides a "substantial basis for finding probable cause"). In sum, however, under the totality-of-the-circumstances, I conclude the affidavit established the veracity and reliability of CI.

¶ 39 The majority also faults Officer McCarthy's corroboration of CI's information. A police officer "may corroborate the tip either by observing the illegal activity or by finding [the material facts] substantially as described by the informant." *Kaysville City v. Mulcahy*, 943 P.2d 231, 236 (Utah Ct.App.1997) (quotations and citations omitted). The majority finds Officer McCarthy's corroboration unhelpful. On the contrary, I conclude Officer McCarthy met both prongs of the corroboration requirement.

¶ 40 Officer McCarthy both observed illegal activity and verified the facts as described by CI. On June 15, 2000, in early morning hours (as described by CI), Officer McCarthy observed short term traffic to and

---

**8.** According to the *Harris* court, "[t]hat the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). Here, CI was "[neither] promised nor paid for any of the information provided."

**9.** The majority claims they could not reasonably infer CI saw marijuana within the last ten days. I disagree. The affidavit provides, "CI has been to the premises numerous times, the most recent

being within the last week to ten days, and observed approx. 3 to 4 pounds of marijuana." Although this language *arguably* does not link the observation of marijuana with CI's most recent visit to Saddler's premises, we "pay great deference to the magistrate's determination," *State v. Vigh*, 871 P.2d 1030, 1033 (Utah Ct.App.1994), and a magistrate could reasonably infer such a link. *See State v. Babbell*, 770 P.2d 987, 992 (Utah 1989) (acknowledging ambiguity of an affidavit, but deferring to magistrate's "reasonable construction" of that ambiguity).

from Saddler's house which, based on his nineteen years of experience and training in narcotics investigation, he believed indicated the sale of drugs in the home. *See Purser,* 828 P.2d at 516, 518 (concluding that where the detective "described his narcotics experience" and "observed persons enter defendant's residence and leave after only a few minutes, ... suggest[ing] narcotics trafficking," such corroboration was helpful in finding probable cause); *State v. White,* 851 P.2d 1195, 1196–97 (Utah Ct.App.1993) (finding that where the detective stated in his affidavit "he had seen vehicles arrive at the [defendant's residence] and stay for a very short period of time[,] ... consistent with the buying and selling of narcotics," such corroboration supported the state's case).

¶ 41 Further, Officer McCarthy had the West Valley Police stop one of the vehicles leaving the premises and the driver possessed one half ounce of marijuana. Police found no drug paraphernalia in the vehicle or on the driver, and based on his training and experience, Officer McCarthy concluded this indicated the driver had just purchased marijuana in Saddler's house.

¶ 42 In verifying the facts described by CI, Officer McCarthy observed the vehicles described by CI at Saddler's home, verified the registered owner of a vehicle was as described by CI, and verified that Saddler worked at BACI'S. In my opinion, officer McCarthy made significant successful efforts to corroborate CI's information.

¶ 43 In conclusion, I reach a different result than the majority based on my application of the facts to the law. This can often happen in the fact sensitive area of the Fourth Amendment. However, what troubles me about the majority's analysis is that I think it is contrary to the deference we should afford to the magistrate in determining whether a search warrant is valid. *See Vigh,* 871 P.2d at 1033 (noting the "great deference" we pay to the magistrate's determination). "[T]he [F]ourth [A]mendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination[.] [I]nstead, it requires only that the reviewing court conclude that the magistrate had a substantial basis for ... [determining] that probable cause existed." *Deluna,* 2001 UT App 401 at ¶ 9, 40 P.3d 1136 (alterations in original) (quotations and citations omitted). I believe the majority conducts a de novo review and gives no deference to the magistrate's determination.

¶ 44 Furthermore, although the majority pays lip service to the "totality-of-the-circumstances" standard for the review of search warrants, I believe it in reality applies the older and stricter Aguilar–Spinelli test. *See, e.g., State v. Jordan,* 665 P.2d 1280, 1286 (Utah 1983) (applying two-pronged Aguilar–Spinelli test *requiring* an affiant demonstrate both basis of knowledge and reliability/veracity). This has not been the law in Utah since 1983, when *State v. Anderton,* 668 P.2d 1258, 1260–61 (Utah 1983), first applied the "totality-of-the-circumstances test" required by *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. *See also State v. Droneburg,* 781 P.2d 1303, 1306 (Utah Ct.App.1989) (noting that "veracity, reliability, and basis of knowledge of confidential informants are no longer strict prerequisites for establishing probable cause," and are instead " 'relevant considerations, among others,' " under the totality-of-the-circumstances test (citation omitted)). The majority's approach undermines what should be our preference for searches conducted pursuant to search warrants. *See Deluna,* 2001 UT App 401 at ¶ 10, 40 P.3d 1136 (observing the Fourth Amendment has a " 'strong preference for searches conducted pursuant to a warrant' " (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331)).

¶ 45 In sum, I would deny Saddler's motion to suppress and uphold the search, which was conducted pursuant to a search warrant, because I conclude under the totality-of-the-circumstances that the affidavit supporting the issuance of the search warrant established probable cause to search Saddler's residence.