2004 UT 105

STATE of Utah, Plaintiff and Petitioner,

v.

Anthony A. SADDLER, Defendant and Respondent.

No. 20030439.

Supreme Court of Utah.

Dec. 17, 2004.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Brendan P. McCullagh, Salt Lake City, for plaintiff.

Linda M. Jones, Shannon N. Romero, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 The State of Utah challenges a court of appeals ruling on defendant Anthony A. Saddler's motion to suppress evidence of drug crimes that police detective Bill McCarthy seized from Saddler's residence pursuant to a search warrant. The court of appeals reversed the district court's denial of Saddler's motion and held that Detective McCarthy's affidavit supporting the search warrant did not adequately support a probable cause determination. We reverse.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On July 15, 2000, Detective Bill McCarthy of the West Valley City Police Department obtained a warrant to search the home of Anthony Saddler for marijuana, cocaine, and items related to the distribution of drugs. In requesting the warrant, McCarthy presented an affidavit to the district court that contained information McCarthy had obtained from a confidential informant. It also included details of McCarthy's efforts to corroborate that informant's information. In executing the warrant, the police found Saddler in possession of marijuana, cocaine, and other materials related to drug distribution. Saddler was subsequently charged with cocaine possession and possession of marijuana with intent to distribute.

¶ 3 Saddler filed a motion to suppress the evidence found in his home, arguing that the evidence was obtained with an unlawful search warrant. The district court denied the motion, and Saddler entered a conditional guilty plea, reserving the right to appeal the district court's ruling. On appeal, the court of appeals reversed the district court's ruling on the motion to suppress. *State v. Saddler*, 2003 UT App 82, ¶ 1, 67 P.3d 1025.

¶ 4 To determine whether Detective McCarthy's affidavit supported a determination of probable cause, the court of appeals invoked the totality-of-the-circumstances test from the United States Supreme Court's decision in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Saddler*, 2003 UT App 82 at ¶ 9, 67 P.3d 1025. However, the court of appeals stated that when the primary support for a warrant is information obtained from an informant, the totality-of-the-circumstances analysis "requires us to consider the three factors articulated by this court in *Kaysville City v. Mulcahy*, 943 P.2d 231, 235–36 (Utah Ct.App. 1997)." *Saddler*, 2003 UT App 82 at ¶ 10, 67 P.3d 1025 (citations omitted). Those three factors consist of (1) the "informant's veracity, reliability and basis of knowledge," (2) whether "the informant gave enough detail about the observed criminal activity," and (3) whether "the police officer independently confirms the informants' information." *Id.* at ¶¶ 11, 20, 22 (internal quotations omitted).

¶ 5 In its analysis, the court of appeals determined that the affidavit failed to satisfy any of the three *Mulcahy* factors. In reviewing the first factor, the court of appeals

concluded that although McCarthy's confidential informant had a sufficient "basis of knowledge" that Saddler was involved in criminal activity because the informant had personally observed Saddler's criminal acts, *id.* at ¶ 12, the informant was unreliable in light of the fact that he had participated in unlawful activities with Saddler and was unknown to the police. *Id.* at ¶¶ 13–18. Furthermore, the court of appeals determined that the second element of the three-factor test was not satisfied because McCarthy did not provide a detailed description of the informant's statement in his affidavit, but merely made conclusory statements about what the informant allegedly said. *Id.* at ¶ 21. Finally, the court held that the third factor, the officer's corroboration of the informant's statements, was not met, again determining that McCarthy's statements in the affidavit about his corroborative efforts were conclusory in nature and lacked sufficient detail to justify credibility.

¶ 6 The State now brings the matter before this court through a petition for writ of certiorari, arguing that McCarthy's affidavit is sufficient to support a finding of probable cause under the *Gates* test because the confidential informant is more reliable than the anonymous informant in *Gates,* and the police were able to corroborate not only innocent details, as in *Gates,* but also instances of specific criminal activity. In addition, the State contends that the court of appeals misapplied the *Gates* totality-of-the-circumstances standard, arguing that the court of appeals' three-factor test from *Mulcahy* is too technical and compartmentalized.

## STANDARD OF REVIEW

■ ¶ 7 We review the court of appeals' assessment of the magistrate's probable cause determination for correctness and ask whether the court of appeals erred in concluding that the magistrate did not have a substantial basis for his probable cause determination. *State v. Norris,* 2001 UT 104, ¶ 14 n. 2, 48 P.3d 872. In so doing, we must "afford the magistrate 'great deference' and consider the affidavit relied upon by the magistrate 'in its entirety and in a common sense fashion.' " *Id.* (quoting *State v. Thurman,* 846 P.2d 1256, 1260 (Utah 1993)). We have also stated that "[e]xcessive technical dissection of an informant's tip or of the nontechnical language in the officer's affidavit is ill-suited to this task." *State v. Hansen,* 732 P.2d 127, 130 (Utah 1987).

## ANALYSIS

### I. THE COURT OF APPEALS' THREE–FACTOR TEST

¶ 8 First, we turn to the court of appeals' use of the three-factor test in its probable cause analysis. The three-factor test originated in *Kaysville City v. Mulcahy,* 943 P.2d 231 (Utah Ct.App.1997). That case involved an informant who called a police dispatcher to report a drunk driver. *Mulcahy,* 943 P.2d at 233. The court addressed the question of whether the tip provided reasonable suspicion sufficient for a police officer to stop the vehicle. *Id.* at 234. The court "gleaned from Utah cases three factors to consider in determining the reliability and sufficiency of the informant's report." *Id.* at 235. The three-factor test analyzed (1) the reliability of the informant, (2) "whether the informant gave enough detail about the observed criminal activity to support a stop," and (3) "whether the police officer's personal observations confirm the [information in] the informant's tip." *Id.* at 236. The court of appeals found that the informant's tip passed the three-factor test and, therefore, provided sufficient reasonable suspicion to justify a stop. *Id.* at 238.

¶ 9 Subsequently, the court of appeals interpreted *Mulcahy* as mandating the three-factor analysis in other Fourth Amendment contexts. *See, e.g., State v. Valenzuela,* 2001 UT App 332, ¶ 15, 37 P.3d 260 (analyzing whether informant's tip gave rise to probable cause to arrest suspected forger); *City of St. George v. Carter,* 945 P.2d 165, 169 (Utah Ct.App.1997) (analyzing whether informant's tip gave rise to reasonable suspicion to detain

suspected drunk driver). In *Valenzuela*, the court of appeals reasoned that there was "nothing to prohibit extending the use of [the *Mulcahy* ] factors to determinations of probable cause in the context of information supplied by an informant." 2001 UT App 332 at ¶ 16, 37 P.3d 260. Shortly thereafter, in *State v. Deluna*, 2001 UT App 401, 40 P.3d 1136, the court of appeals extended the three-factor analysis to the search warrant context, stating that where "information obtained from informants is the primary source for the search warrant, an analysis of the totality of the circumstances *requires* us to consider the three factors articulated by this court in *Kaysville v. Mulcahy*." *Id.* at ¶ 11 (emphasis added). Based on this line of cases, the court of appeals used the same three-factor test in determining that McCarthy's affidavit did not support a finding of probable cause. *Saddler*, 2003 UT App 82 at ¶ 9, 67 P.3d 1025.[1]

¶ 10 We note that the court of appeals has developed this three-factor analysis in the absence of any direction from us. Nonetheless, we find that such an exacting analysis is ill-suited to conducting a commonsense probable cause determination for at least two reasons. First, "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area.' " *Gates*, 462

U.S. at 235, 103 S.Ct. 2317 (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). Additionally, "given the informal, often hurried context in which it must be applied, the 'built-in subtleties' of [a formal test] are particularly unlikely to assist magistrates in determining probable cause." *Id.* at 236, 103 S.Ct. 2317 (citation omitted).

## II. DETECTIVE McCARTHY'S AFFIDAVIT UNDER A TOTALITY–OF–THE–CIRCUMSTANCES ANALYSIS

¶ 11 In our probable cause cases, we have consistently employed *Gates'* flexible totality-of-the-circumstances standard. *See State v. Norris*, 2001 UT 104, ¶ 14, 48 P.3d 872; *State v. Anderson*, 910 P.2d 1229, 1233 (Utah 1996); *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993); *State v. Babbell*, 770 P.2d 987, 991 (Utah 1989); *State v. Hansen*, 732 P.2d 127, 130 (Utah 1987); *State v. Anderson*, 701 P.2d 1099, 1101 (Utah 1985); *State v. Bailey*, 675 P.2d 1203, 1205 (Utah 1984). We have recognized that

> an informant's "reliability" and "basis of knowledge" are but two relevant considerations, among others, in determining the existence of probable cause under "a totality-of-the-circumstances." They are not strict, independent requirements to be "rigidly exacted" in every case. A weak-

---

1. The rise of the three-factor test in the court of appeals is remarkably similar to how the two-pronged test came about in United States Supreme Court probable cause jurisprudence. In *Illinois v. Gates*, the Court addressed the two-pronged test that originated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and which was followed by *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In *Aguilar*, the Court set out some factors "simply as *guides* to a magistrate's determination of probable cause." *Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (emphasis added). However, when the *Spinelli* Court failed to find probable cause from an affidavit because it did not satisfy the factors in *Aguilar*, other courts understood the factors as *absolute* requirements for probable cause. *Id.* at 228, 103 S.Ct. 2317. Ultimately, the two-pronged test that resulted from these cases *required* that before a magistrate could rely on an informant's information in an affidavit to support probable cause, the affidavit had to show

clearly (1) the informant's "basis of knowledge" and (2) either the "veracity" of the information or the "reliability" of the informant's report. *Id.* at 228–29, 103 S.Ct. 2317.

In *Gates*, the Supreme Court rejected the notion that such an exacting analysis was required to determine probable cause:

> [I]t is wiser to abandon the "two-pronged test" established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. 2317.

ness in one or the other is not fatal to the warrant so long as in the totality there is substantial basis to find probable cause. The indicia of veracity, reliability, and basis of knowledge are nonexclusive elements to be evaluated in reaching the practical, common-sense decision whether, given all the circumstances, there is a fair probability that the contraband will be found in the place described.

*Hansen*, 732 P.2d at 130 (quoting *Gates*, 462 U.S. at 230, 233–34, 103 S.Ct. 2317).

¶ 12 In this case, after detailing McCarthy's experience and training in the investigation of narcotics-related offenses, the affidavit includes the following information:

[McCarthy] is investigating Anthony A. Saddler for usage and distribution of controlled substances, specifically marijuana and cocaine. [McCarthy] received information from a confidential informant, hereinafter referred to as CI. [McCarthy] ask[s] the courts not to require [McCarthy] to publish the CI's name. [McCarthy] believes that the CI may be harmed if CI's name were published. [McCarthy] was told the following by the CI:

1. CI has known the suspect, Saddler for over 1 year,

2. CI has observed the suspect use cocaine and marijuana on numerous occasions during the last year,

3. CI has used marijuana with the suspect on several occasions,

4. CI has been to the premises numerous times, the most recent being within the last week to ten days, and observed approx. 3 to 4 pounds of marijuana,

5. CI has observed three scales inside the home, that the suspect uses to weigh out repackaged marijuana for resale,

6. CI has observed cocaine inside the premises, along with packaging material,

7. CI has observed the suspect carry marijuana and cocaine on his person,

8. The suspect has told the CI that the suspect sells marijuana and cocaine,

9. CI has observed the suspect sell and use controlled substances, inside the named premises,

10. CI has been told by the suspect that the suspect recently purchased the listed premises,

11. CI states that the suspect's only legitimate source of income is from a part time waiter's job at a Salt Lake City restaurant, BACCI's,

12. CI states that the suspect sells controlled substances to be able to afford his own usage and as a separate source of income,

13. CI provided a description of the home, a vehicle frequently used by the suspect (female companion of suspect), and hours of operation of the suspect,

14. CI states that the suspect is home infrequently and usually during the late evening hours.

¶ 13 In the affidavit, McCarthy stated that he believed that

the observations of the CI are first hand, accurate and truth full [sic], for the following reasons. CI's observations are first hand and from a person that has used marijuana and would recognize[ ] the substance when observed. CI has not been promised nor paid for any of the information provided. CI has provided the information out of a sense of guilt and desire to stop the sales and usage of controlled substances into the community. CI's observations were over a long period of time, even though the suspect has only recently occupied the listed premises, within the last couple of months. CI states that the illicit sales and operation is ongoing and has been long term.

¶ 14 The affidavit further describes McCarthy's efforts to corroborate the information he received from the confidential informant:

[McCarthy] was performing surveillance on [Saddler] at his home address in West Valley on 6/14/00. During the initial sur-

veillance [McCarthy] did not observe anyone at the residence, the surveillance was intermittent from 2000 hours until 0600 6/15/00. During the surveillance on 6/15/00 [McCarthy] observed some short term traffic which [he] believes was drug related. [McCarthy] had West Valley City Police Patrol perform a traffic stop on one of the vehicles leaving the listed premises. During the aforementioned traffic stop the driver was arrested for outstanding warrants and later found to be in possession of marijuana, approximately one half ounce. During the search of the vehicle, a small section of plastic bag was found, by [McCarthy], and appears to have residue of cocaine inside the twist section of the bag. [McCarthy] assisted in the search of the vehicle and would like to inform the courts that no drug paraphernalia, used in the ingestion of marijuana or cocaine, was located....

. . . .

... [McCarthy] believed this evidence shows that the marijuana was purchased from the listed premises [Saddler's home].

¶ 15 Other corroborated details in the affidavit include the following: "[McCarthy] observed vehicles described by CI at the named premises and the registered owner was a[s] described by CI." McCarthy's observations also confirmed that Saddler "was only at home during the late evening hours." In addition, to verify Saddler's employment at the restaurant, "[McCarthy] checked on 6/15/00 and [Saddler] was not at work and it was unknown when he was scheduled to return."

■ ¶ 16 We agree with the magistrate that, viewed in its entirety and in a common sense fashion, McCarthy's affidavit sets forth sufficient underlying circumstances to support the reliability and credibility of the confidential informant and McCarthy's corroborative efforts. However, the court of appeals and Saddler have excessively parsed several statements in the affidavit in order to reach the opposite conclusion. While McCarthy's affidavit may not be a paragon of clarity, this

court has held that reviewing courts should rely on a magistrate's "reasonable construction" of ambiguity in an affidavit. *Babbell*, 770 P.2d at 992; *see also id.* at 991 ("[T]he reviewing court should pay 'great deference' to the magistrate's decision." (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. 2317)).

¶ 17 In at least three specific instances, the court of appeals construed passages in the affidavit against the issuing court's reasonable construction, proving fatal to the warrant. The first instance concerned McCarthy's request to conceal the informant's name. In the affidavit, he stated: "Your affiant [McCarthy] received information from a confidential informant, hereinafter referred to as CI. Your affiant ask[s] the courts not to require your affiant to publish the CI's name. Your affiant believes that the CI may be harmed if the CI's name were published."

¶ 18 The court of appeals stated that, according to this language, it was unclear whether the confidential informant had revealed his name. *Saddler*, 2003 UT App 82 at ¶ 16, 67 P.3d 1025 ("We do not know whether CI told McCarthy his name."). However, we conclude that "a magistrate could reasonably construe Officer McCarthy's knowledge of CI's name from the affidavit's language." *Id.* at ¶ 34 (Billings, J., dissenting). This knowledge, in turn, bolsters the confidential informant's reliability because, by identifying himself to the police and admitting to smoking marijuana, he was clearly making statements against his penal interest. *See United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) ("Admissions of crime ... carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.").

¶ 19 The court of appeals, on the other hand, concluded that the confidential informant made no statement against his penal interest because he was unknown to the police. *Saddler*, 2003 UT App 82 at ¶ 16 n. 3, 67 P.3d 1025. Further, the court of appeals determined that, even if McCarthy knew the confidential informant's identity, the confi-

dential informant made no statement against his penal interest because "there is no other evidence against him" to support his admission. *Id.* ¶ 18. However, this judgment is contrary to the United States Supreme Court's guidance in *Harris.* In that case, an unnamed informant who had been purchasing illegal liquor over a period of two years came forward to the police. *Harris,* 403 U.S. at 583, 91 S.Ct. 2075. The police used the informant's statement in an affidavit when applying for a search warrant. *Id.* The Court found that the informant's statement against his penal interest greatly enhanced his reliability stating that "the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, *itself and without more,* implicated that property and furnished probable cause to search." *Id.* at 584, 91 S.Ct. 2075 (emphasis added).

¶ 20 In contrast, the court of appeals here concluded that the confidential informant's participation in crime made him less reliable. Yet we have upheld the judgment of magistrates who have reasonably relied on informants involved in criminal activity. *See, e.g., State v. Espinoza,* 723 P.2d 420, 421 (Utah 1986) (police used confidential informant to perform a controlled buy from suspect); *State v. Williamson,* 674 P.2d 132, 133–34 (Utah 1983) (officers obtained reliable information about location of contraband from burglar who had stolen contraband from warehouse). Ultimately, such a judgment of the confidential informant's reliability should be made with reference to the totality of the facts and circumstances presented.

¶ 21 Furthermore, even if the confidential informant's reliability were in question, this would not necessarily be fatal to the warrant under the totality-of-the-circumstances standard. In *Gates,* information came to the police in an anonymous letter with no means of verifying the identity of the informant or his basis of knowledge. *Gates,* 462 U.S. at 225–27, 103 S.Ct. 2317. Nevertheless, the Court found that the warrant was supported

by probable cause because of the detailed information that the police were able to corroborate. *Id.* at 241–42, 103 S.Ct. 2317.

¶ 22 Here, McCarthy's corroborative effort was significant. Between 8:00 p.m. on June 14, 2000, and 6:00 a.m. on June 15, 2000, Detective McCarthy was watching the Saddler house. During his surveillance on the 15th, he observed short visits to the house that he considered consistent with the sale of drugs. He had local police stop one of the visitors who was leaving the house. While searching the individual, police officers found both marijuana and cocaine, but no paraphernalia normally required to use the drugs, leading McCarthy to believe the drugs had been recently acquired.

¶ 23 The court of appeals concluded that this information did not verify the informant's statement that Saddler sold drugs from his home nor that his "hours of operation" were in the late evening. It stated that in this part of the affidavit "McCarthy provides only conclusory information about this corroborative effort." *Saddler,* 2003 UT App 82 at ¶¶ 23–24, 67 P.3d 1025. We disagree with this characterization of McCarthy's corroboratory information. We find that it was reasonable for the magistrate to conclude from this information, especially in light of McCarthy's nineteen years of experience, that Saddler was likely to be selling drugs from his home.

¶ 24 In addition, McCarthy was able to verify other, more innocent details provided by the confidential informant, namely, that vehicles described by the confidential informant were at Saddler's home, that the registered owner of a vehicle at Saddler's home was as described by the confidential informant, and that Saddler worked at BACI'S restaurant. This corroboration of innocent details further boosts the confidential informant's credibility. *See Gates,* 462 U.S. at 244, 103 S.Ct. 2317 (" 'Because an informant is right about some things, he is more probably right about other facts.' " (quoting *Spi-*

**1272**

*nelli*, 393 U.S. at 427, 89 S.Ct. 584)).[2]

¶ 25 Finally, while the court of appeals determined that the confidential informant had an adequate basis of knowledge, it failed to recognize the value of the confidential informant's first-hand observation of criminal activity. The court of appeals reasoned that "[w]hile basis of knowledge tells us how CI acquired his information, it does not tell us whether he was qualified to assess the information, whether he relayed the information accurately, or whether he is trustworthy." *Saddler*, 2003 UT App 82 at ¶ 12 n. 2, 67 P.3d 1025.

¶ 26 We have held just the opposite. In *Hansen*, we addressed the sufficiency of an affidavit based on statements from a confidential informant that he had seen large quantities of marijuana in the suspect's home five days previously. 732 P.2d at 129. We concluded:

> The reliability of the confidential disclosure was also enhanced by the informant's personal observation of the large quantity of marijuana that was being sold in smaller quantities. His information, relied upon by police, was not some remote hearsay or assumption based on circumstantial events. The statement that the drug and its sale were personally observed in defendant's apartment adequately sets forth the informant's basis of knowledge. The circumstances as a whole adequately indicate that the informant's report was truthful.

*Id.* at 130; *see also Gates*, 462 U.S. at 234, 103 S.Ct. 2317 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."). McCarthy's affidavit states: "CI has been to the premises numerous times, the most recent being within the last week to ten days, and observed approx. 3 to 4 pounds of marijuana." Clearly this first-hand knowledge bolsters his credibility.

**CONCLUSION**

¶ 27 We acknowledge the efforts of the court of appeals to develop the jurisprudence of probable cause analysis in the absence of further guidance from us. However, we decline to adopt the detailed application of the *Mulcahy* three-factor test as it has come to be applied, and return to the more flexible, common sense test we have always applied. Under this standard, we conclude that because of the informant's inherent reliability and McCarthy's corroborative efforts, the affidavit was sufficient to provide a substantial basis to the magistrate for determining that probable cause existed.

¶ 28 The decision of the court of appeals is reversed, and the judgment of the district court affirmed.

¶ 29 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

---

2. Although myriad other innocent details might have been given by the confidential informant and later verified by McCarthy, the handful cited here are sufficient to make the point to the magistrate.